**Opinion issued December 6, 2016**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-16-00501-CV

———————————

## IN THE MATTER OF H.Y.

On Appeal from the 314th District Court
Harris County, Texas
Trial Court Case No. 2013-01505J

## O P I N I O N

This is an accelerated appeal from the juvenile court's second order waiving jurisdiction and transferring H.Y. to criminal district court to stand trial as an adult. H.Y. was previously transferred, but a panel of this Court reversed that order pursuant to *Moon v. State*, 451 S.W.3d 28 (Tex. Crim. App. 2014), because it did not include the findings required by the Juvenile Justice Code for transfer pursuant

to section 54.02(a). *Yado v. State*, No. 01-14-00578-CR, 2015 WL 3982045, at *1 (Tex. App.—Houston [1st Dist.] June 30, 2015, no pet.). On remand, the juvenile court again waived its jurisdiction and certified H.Y., who was at that point over the age of 18, to stand trial as an adult.

On appeal, H.Y. argues that (1) the juvenile court improperly admitted evidence at the transfer hearing in violation of the Texas Rules of Evidence and Code of Criminal Procedure, (2) Juvenile Justice Code section 54.02(j), which governs transfer of those who have reached the age of 18, violates the equal protection clauses of the United States and Texas constitutions, and (3) insufficient evidence supports the juvenile court's findings supporting transfer. We affirm.

## Background

### First transfer and appeal

In March 2013, the State filed a petition in Harris County juvenile court alleging that H.Y., at age 16, engaged in delinquent conduct by committing aggravated robbery with a deadly weapon. Two months later, in May 2013, the State moved to transfer H.Y. to criminal district court to be tried as an adult pursuant to section 54.02(a) of the Juvenile Justice Code. The juvenile court held a hearing on the motion and signed an order in July 2013 waiving its jurisdiction and transferring H.Y. to criminal district court.

In the criminal district court, H.Y. entered into a plea agreement with the State, and pursuant to that agreement, the district court assessed punishment at ten years' imprisonment, but certified H.Y.'s right to pursue appeal of the juvenile court's transfer order.[1] *Yado*, 2015 WL 3982045, at *2. On appeal, this Court held that the juvenile court did not make the statutorily-required findings to support the transfer, vacated the district court's judgment, dismissed the criminal district court case, and remanded the case to the juvenile court. *Id.*

***Proceedings on remand***

H.Y. had turned 18 years old by the time this Court's mandate issued in September 2015. On remand, the State again moved to transfer H.Y. from the juvenile court to the criminal district court pursuant to section 54.02(a). H.Y. responded, opposing the motion on several grounds, including that section 54.02(a) only permits transfer of those 17 years of age and younger. The State subsequently filed an amended petition and motion to transfer seeking to transfer H.Y. pursuant to section 54.02(j) of the Juvenile Justice Code, which governs transfers from juvenile court when the person is 18 years of age or older.

---

[1]    In 2013, a transfer order was not immediately appealable and could be challenged only on appeal from a final conviction. In 2015, the Legislature amended Family Code section 56.01(c) to allow an interlocutory appeal from a juvenile court's transfer order to criminal district court issued on or after September 1, 2015. *See* Act of May 12, 2015, 84th Leg., R.S., ch. 74, § 3, 2015 Tex. Gen. Laws 1065, 1065.

### Second transfer hearing

#### Equal protection argument

The juvenile court held a hearing on the motion to transfer. At the hearing, H.Y. argued that section 54.02(j) violated the equal protection clauses of the Texas and United States constitutions because it enabled the State to transfer a person who has reached the age of 18 more easily than a person under the age of 18. H.Y. contended that juveniles are a suspect class and that the statute unlawfully penalized him for prevailing in his first appeal by making it easier for the State to transfer him on remand since he had reached the age of 18. The trial court overruled H.Y.'s equal protection argument.

#### Testimony and evidence regarding offense

Sergeant R. Opperman of the Houston Police Department, the sole witness at the hearing, testified that he was working an approved extra job on March 3, 2013, when he heard over the radio that three Hispanic males had just robbed a man at gunpoint and stolen his wallet. Another officer located the suspects driving a previously stolen vehicle. The suspects fled, crashing the car in the vicinity of a parking garage and continuing on foot.

Opperman responded to the scene and saw H.Y. jumping from the parking garage onto a nearby hill. H.Y. matched the description of the driver of the vehicle,

4

so Opperman pursued him and took him into custody. He searched H.Y. and found a pistol magazine in his pocket.

Opperman took H.Y. to the complainant's location a block away where another officer conducted a show-up procedure and the complainant identified H.Y. as the person who had pointed a gun at him during the robbery. H.Y. was searched and $644 was found in his shoe. Opperman testified that the complainant's wallet and credit card were found in the vehicle from which H.Y. had fled.

In addition to Opperman's testimony, a number of exhibits were admitted at the transfer hearing. Among these was the probation report, which detailed the circumstances of the crime, including the fact that H.Y. was driving the suspect vehicle, the evidence found on his person, and the fact that the complainant identified H.Y. as the person who pointed a gun at him during the robbery.

*Evidentiary objections*

H.Y. objected to the admission of various parts of Opperman's testimony at the hearing on the ground that the testimony violated the Rules of Evidence or Chapter 38 of the Code of Criminal Procedure. He argued that section 51.17(c) of the Juvenile Justice Code makes the Rules of Evidence and Chapter 38 of the Code of Criminal Procedure applicable to a transfer hearing and therefore the trial court was required to exclude the complained-of evidence on this basis.

H.Y. objected that Opperman's testimony about the following was inadmissible hearsay because he heard about these events from other officers and did not directly witness them:

- Descriptions of the alleged suspects;

- The fact that $644 was found in H.Y's shoe;

- The fact that the complainant's property was found in the suspect vehicle;

- The complainant's account of the robbery and the fact that the complainant identified H.Y.; and

- The fact that H.Y. was driving the suspect vehicle.

The juvenile court overruled H.Y.'s hearsay objections.

H.Y. also objected to the admission of Opperman's testimony regarding the complainant's show-up identification of H.Y. and the $644 found in H.Y.'s shoe while he was at the show-up location on the grounds that this evidence was illegally obtained. H.Y. argued that section 52.02 of the Juvenile Justice Code required Opperman to take H.Y. directly to the juvenile processing office and did not permit Opperman to bring H.Y. to the complainant's location for a show-up identification. Section 52.02 provides in relevant part:

> [A] person taking a child into custody, without unnecessary delay and without first taking the child to any place other than a juvenile processing office designated under Section 52.025, shall do one of the following:

6

(1) release the child to a parent, guardian, custodian of the child, or other responsible adult upon that person's promise to bring the child before the juvenile court as requested by the court;

(2) bring the child before the office or official designated by the juvenile board if there is probable cause to believe that the child engaged in delinquent conduct, conduct indicating a need for supervision, or conduct that violates a condition of probation imposed by the juvenile court;

(3) bring the child to a detention facility designated by the juvenile board;

(4) bring the child to a secure detention facility as provided by Section 51.12(j);

(5) bring the child to a medical facility if the child is believed to suffer from a serious physical condition or illness that requires prompt treatment;

(6) dispose of the case under Section 52.03; or

(7) if school is in session and the child is a student, bring the child to the school campus to which the child is assigned if the principal, the principal's designee, or a peace officer assigned to the campus agrees to assume responsibility for the child for the remainder of the school day.

TEX. FAM. CODE § 52.02(a). H.Y. argued that this testimony should therefore be excluded pursuant to Chapter 38 of the Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. art. 38.23 (no evidence obtained in violation of the law shall be admitted in evidence against accused on the trial of any criminal case). The juvenile court overruled this objection.

The juvenile court signed an order waiving jurisdiction over H.Y. and transferring him to the criminal district court. H.Y. appealed.

## Admissibility of Evidence

H.Y.'s first nine issues rely upon his argument that Juvenile Justice Code section 51.17 required the juvenile court to determine the admissibility of evidence under the Rules of Evidence and Chapter 38 of the Code of Criminal Procedure at the transfer hearing. In his first through sixth issues, H.Y. argues that the juvenile court erred by admitting various types of hearsay testimony. In his seventh and eighth issues, H.Y. argues that the juvenile court erred by admitting evidence regarding the fruit of the allegedly illegal show-up identification and search of his shoe. In his ninth issue, H.Y. contends that these errors cumulatively caused him harm.

### A.    Standard of Review

We review a trial court's decision to admit evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). A trial court abuses its discretion only if its decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008). However, even if a trial court errs by admitting evidence, any error in the admission is cured where the same evidence comes in elsewhere without objection. *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003).

**B.    Applicable Law**

The Juvenile Justice Code includes a chapter of "general provisions" that includes definitions, jurisdictional provisions, and other guidance for juvenile proceedings. *See* TEX. FAM. CODE ch. 51 ("General Provisions"). As relevant here, section 51.17(c) provides:

> Except as otherwise provided by this title, the Texas Rules of Evidence applicable to criminal cases and Articles 33.03 and 37.07 and Chapter 38, Code of Criminal Procedure, apply in a judicial proceeding under this title.

TEX. FAM. CODE § 51.17(c). Section 54.02 is part of chapter 54 of the Juvenile Justice Code, entitled "Judicial Proceedings." TEX. FAM. CODE ch. 54.

Waiver of jurisdiction over a juvenile is governed by section 54.02 of the Juvenile Justice Code. TEX. FAM. CODE § 54.02. Among other things, section 54.02 provides that before transferring a juvenile to be tried as an adult, the juvenile court "shall order and obtain a complete diagnostic study, social evaluation, and full investigation of the child, his circumstances, and the circumstances of the alleged offense." TEX. FAM. CODE § 54.02(d). Section 54.02 further provides:

> At the transfer hearing the court may consider written reports from probation officers, professional court employees, or professional consultants in addition to the testimony of witnesses. At least five days prior to the transfer hearing, the court shall provide the attorney for the child and the prosecuting attorney with access to all written matter to be considered by the court in making the transfer decision.

TEX. FAM. CODE § 54.02(e).

9

**C. Analysis**

H.Y. argues that the juvenile court erred by admitting hearsay testimony regarding:

- Descriptions of the alleged suspects;

- The fact that $644 was found in H.Y's shoe;

- The fact that the complainant's property was found in the suspect vehicle;

- The complainant's account of the robbery and the fact that the complainant identified H.Y.; and

- The fact that H.Y. was driving the suspect vehicle.

He also argues that the trial court erred by admitting testimony regarding the evidence obtained at the site of the show-up identification (i.e., the complainant's identification of H.Y. and the $644 in his shoe) because it was illegal for H.Y. to be taken to the site of the show-up instead of directly to the juvenile processing center. H.Y. argues that the admission of this testimony was error because it violated the Rules of Evidence and Chapter 38 of the Code of Criminal Procedure, which the trial court was required to apply pursuant to section 51.17(c) of the Juvenile Justice Code. The State responds that even if the trial court erred by admitting this testimony, any error in its admission was cured because similar evidence was admitted without objection through the probation report.

Both parties agree that no published Texas case has squarely addressed whether section 51.17(c) of the Juvenile Justice Code makes the Rules of Evidence

10

and Chapter 38 of the Code of Criminal Procedure applicable to a transfer hearing. The State points out that a panel of this court in an unpublished decision concluded that a juvenile court is not required to rule on the admissibility of evidence during a transfer hearing. *See Navarro v. State*, Nos. 01-11-00139-CR & 01-11-00140-CR, 2012 WL 3776372, at *6 (Tex. App.—Houston [1st Dist.] Apr. 17, 2013, pet. ref'd) (mem. op., not designated for publication). H.Y. did not address *Navarro* in his opening brief or his reply to the State's brief.

However, we need not resolve whether the Rules of Evidence or Chapter 38 of the Code of Criminal Procedure apply to juvenile transfer hearings pursuant to section 51.17(c), because even if we were to reach this claim, it would not result in reversal of the juvenile court's order in this case. *See* TEX. R. APP. P. 47.1 (appellate court's opinion should address those issues necessary to disposition of appeal). Virtually all of the evidence about which H.Y. complains was admitted in the probation report, to which he did not object. The probation report includes:

- Descriptions of the alleged suspects;

- The fact that $644 was found in H.Y's shoe;

- The complainant's account of the robbery and the fact that the complainant identified H.Y. as the person who pointed a gun at him; and

- The fact that H.Y. was driving the suspect vehicle.

Section 54.02(e) expressly permits a juvenile court to consider probation reports in making its transfer decision, TEX. FAM. CODE § 54.02(e), and H.Y. did not object to

the admission of the probation report.  Accordingly, any error in the admission of this same evidence via Opperman was harmless.  *See Valle*, 109 S.W.3d at 509 (any error in admission of evidence is cured where same evidence comes in elsewhere without objection)

The only complained-of evidence that was not included in the probation report was the fact that the complainant's wallet and credit card were found in the suspect vehicle.  But other equally incriminating evidence—including the fact that the complainant identified H.Y. as the person who pointed a gun at him, that H.Y. was driving the vehicle that fled from investigating officers, and that when apprehended, H.Y. had a pistol magazine—was admitted without objection.  We therefore conclude that any error in the admission of evidence regarding the complainant's property being found in the vehicle was also harmless.  *Cf. Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998) (error in admission of evidence is harmless and must be disregarded if it had no or only slight influence on verdict).

In short, H.Y. has not demonstrated that the admission of the complained-of evidence harmed him because it was essentially cumulative of other evidence admitted without objection.  *See Valle*, 109 S.W.3d at 509.  Accordingly, we hold that the juvenile court's order is not subject to reversal for admitting the complained-of evidence.  *See id.*

We overrule H.Y.'s first through ninth issues.

12

**Equal Protection**

In his tenth issue, H.Y. argues that Juvenile Justice Code section 54.02(j), which governs the transfer of those 18 and older, violates the equal protection clauses of the Texas and United States constitutions.

## A.     Standard of Review and Applicable Law

We review the constitutionality of a statute de novo, *see Stockton v. Offenbach*, 336 S.W.3d 610, 614–15 (Tex. 2011), beginning with the presumption that the statute is constitutional. TEX. GOV'T CODE § 311.021(1); *Sax v. Votteler*, 648 S.W.2d 661, 664 (Tex .1983); *see also Ex parte Lo*, 424 S.W.3d 10, 14–15 (Tex. Crim. App. 2013), *Methodist Healthcare Sys. of San Antonio, Ltd. v. Rankin*, 307 S.W.3d 283, 285 (Tex. 2010). The Texas constitution provides that all free men have equal rights, and the United States Constitution provides that no state shall deny any person within its jurisdiction the equal protection of the laws. U.S. CONST. amend. XIV, § 1; TEX. CONST. art. I, § 3. These standards are "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 3254 (1985).

An equal protection challenge to a statute involves a two-step analysis. We first determine the level of scrutiny required, and then apply that level of scrutiny to the statute. *Cannady v. State*, 11 S.W.3d 205, 215 (Tex. Crim. App. 2000). A statute is evaluated under "strict scrutiny" if it interferes with a "fundamental right" or

13

discriminates against a "suspect class." *Id.*; *Walker v. State*, 222 S.W.3d 707, 711 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). Otherwise, the challenged statute need only be "rationally related to a legitimate governmental purpose" to survive the equal protection challenge (the "rational-basis test"). *Cannady*, 11 S.W.3d at 215; *Walker*, 222 S.W.3d at 711; *see Romer v. Evans*, 517 U.S. 620, 631, 116 S. Ct. 1620, 1627 (1996) ("[I]f a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end."). When the rational-basis test applies, the challenging party has the burden to negate "any reasonably conceivable state of facts that could provide a rational basis for the classification." *Alobaidi v. Univ. of Tex. Health Sci. Ctr. at Hous.*, 243 S.W.3d 741, 747 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (quoting *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367, 121 S. Ct. 955, 964 (2001)).

The Supreme Court has described a "suspect class" as one "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 313, 96 S. Ct. 2562, 2567 (1976) (per curiam) (internal quotations omitted) (holding that rational-basis test applied to mandatory police retirement age). Examples of recognized suspect classes include classes defined by race, alienage,

14

and national origin. *Cleburne*, 473 U.S. at 440–41, 105 S. Ct. 3254–55. In the absence of a suspect classification, a state law is not repugnant to the equal protection clause so long as unequal treatment of persons is based upon a reasonable and substantial classification of persons. *Weaver v. State*, 823 S.W.2d 371, 374 (Tex. App.—Dallas 1992, pet. ref'd) (citing *Vasquez v. State*, 739 S.W.2d 37, 43 (Tex. Crim. App. 1987)).

"Age has never been held to be a suspect classification requiring strict scrutiny under an equal protection analysis; therefore, any rational basis may justify the classification." *Id.* (citing *Walker v. Emps. Ret. Sys.*, 753 S.W.2d 796, 797 (Tex. App.—Austin 1988, writ denied)); *see also Benavidez v. State*, 655 S.W.2d 233, 235–36 (Tex. App.—Corpus Christi 1983, pet. ref'd) ("It is well settled that age alone does not establish a suspect class because it does not define a 'discrete and insular group' in need of 'extraordinary protection from the majoritarian political process.'") (quoting *Murgia*, 427 U.S. at 313, 96 S. Ct. at 2566). A legislative classification based on age is constitutionally permissible if it is reasonable, not arbitrary, and rests upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced are treated alike. *Id.*

15

**B.     Applicable Law**

The Juvenile Justice Code provides two different standards for transfer—one for those who are under 18, and another for those who have reached the age of 18. The primary distinction between the two standards is that the juvenile court must consider the person's likelihood of rehabilitation if he is under 18, but is not required to consider it if the person is 18 or older. The juvenile court may waive jurisdiction over a child under the age of 18 if it finds:

> (1) the child is alleged to have violated a penal law of the grade of felony;
>
> (2) the child was:
>
>> (A) 14 years of age or older at the time he is alleged to have committed the offense, if the offense is a capital felony, an aggravated controlled substance felony, or a felony of the first degree, and no adjudication hearing has been conducted concerning that offense; or
>>
>> (B) 15 years of age or older at the time the child is alleged to have committed the offense, if the offense is a felony of the second or third degree or a state jail felony, and no adjudication hearing has been conducted concerning that offense; and
>
> (3) after a full investigation and a hearing, the juvenile court determines that there is probable cause to believe that the child before the court committed the offense alleged and that because of the seriousness of the offense alleged or the background of the child the welfare of the community requires criminal proceedings.

TEX. FAM. CODE § 54.02(a). In determining whether the welfare of the community requires criminal proceedings, the juvenile court "shall consider, among other matters":

(1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person;

(2) the sophistication and maturity of the child;

(3) the record and previous history of the child; and

(4) the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.

*Id.* § 54.02(f).

By contrast, the juvenile court may waive jurisdiction when the person before the juvenile court has reached the age of 18 if it finds:

(1) the person is 18 years of age or older;

(2) the person was:

> (A) 10 years of age or older and under 17 years of age at the time the person is alleged to have committed a capital felony or an offense under Section 19.02, Penal Code;

> (B) 14 years of age or older and under 17 years of age at the time the person is alleged to have committed an aggravated controlled substance felony or a felony of the first degree other than an offense under Section 19.02, Penal Code; or

> (C) 15 years of age or older and under 17 years of age at the time the person is alleged to have committed a felony of the second or third degree or a state jail felony;

(3) no adjudication concerning the alleged offense has been made or no adjudication hearing concerning the offense has been conducted;

(4) the juvenile court finds from a preponderance of the evidence that:

> (A) for a reason beyond the control of the state it was not practicable to proceed in juvenile court before the 18th birthday of the person; or

(B) after due diligence of the state it was not practicable to proceed in juvenile court before the 18th birthday of the person because:

(i) the state did not have probable cause to proceed in juvenile court and new evidence has been found since the 18th birthday of the person;

(ii) the person could not be found; or

(iii) a previous transfer order was reversed by an appellate court or set aside by a district court; and

(5) the juvenile court determines that there is probable cause to believe that the child before the court committed the offense alleged.

*Id.* § 54.02(j).

**D.    Analysis**

H.Y. contends that section 54.02(j) violates the equal protection clause because it permits the State to more easily try a person as an adult for a crime he committed as a child if the child prevails on his appeal of the original certification order but reaches the age of 18 during the appellate process.  He argues that children are a suspect class and therefore we should apply the strict scrutiny standard.  The State responds that children are not a suspect class and therefore the statute need only meet the rational-basis test.  The State acknowledges that having a different standard for transfer for those under 18 and 18 and over is a form of age discrimination.  However, it argues that the statutory distinction has a rational basis because the procedures, services, and facilities available in the juvenile court are not appropriate for those who are no longer juveniles, and making it easier for juvenile

courts to transfer those who "age out" enables juvenile courts to better serve their target demographic.

It is well-recognized that age does not constitute a suspect class, and H.Y. cites no authority that has held otherwise. Indeed, at least one Texas court has concluded that minors are not a suspect class. *See Benavidez*, 655 S.W.2d at 235–36. H.Y. notes that children are "unable to vote, . . . have lesser rights or control over their lives, and [an] intellect [that] is not fully developed," but this does not demonstrate that children are "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." *See Murgia*, 427 U.S. at 313, 96 S. Ct. at 2567 (rejecting age as suspect class). Moreover, H.Y. is not actually complaining about the statute's treatment of children, but rather, the statute's treatment of those who have reached the age of 18 and are no longer minors. In short, H.Y. has not demonstrated that the statute discriminates against a suspect class; accordingly, we will apply rational basis review. *Cannady*, 11 S.W.3d at 215.

Because the rational-basis test applies, H.Y. bears the burden to negate "any reasonably conceivable state of facts that could provide a rational basis" for the statute's dissimilar treatment of those 17 and under versus those 18 and over. *See Alobaidi*, 243 S.W.3d at 747. H.Y. argues that 54.02(j) cannot survive rational basis

review because "[t]he government has no legitimate interest in punishing children who successfully enforce their statutorily created rights under § 54.02(a) by prevailing on appeal." H.Y. argues that the Legislature recognized this and changed the law in 2015 so that a juvenile can immediately appeal from a transfer order instead of waiting until judgment is entered against them in the criminal district court, as he was required to do when he was originally transferred. *See* Act of May 12, 2015, 84th Leg., R.S., ch. 74, § 3, 2015 Tex. Gen. Laws 1065, 1065; *see also* TEX. FAM. CODE § 56.01(c).

The text of the statute negates H.Y.'s argument. The statute itself recognizes that one of the reasons for transferring a person 18 years or older to the criminal district court would be if the person is returned to the juvenile court after a transfer order is reversed and the juvenile has reached the age of 18. As the State points out, there are many reasons to have non-juveniles transferred out of the juvenile court, including the fact that the resources of the juvenile court are designed to assist and rehabilitate juveniles, not adults. H.Y. thus has failed to negate "any reasonably conceivable state of facts that could provide a rational basis" for the statute's dissimilar treatment of those 17 and under versus those 18 and over. *See Alobaidi*, 243 S.W.3d at 747.

We overrule H.Y.'s tenth issue.

**Waiver**

In his eleventh issue, H.Y. argues that the juvenile court abused its discretion by waiving jurisdiction because insufficient evidence supports two of the required statutory factors for transferring an individual over 18 years old. Specifically, H.Y. contends that there is insufficient evidence that (1) probable cause existed that he committed the alleged offense, and (2) after due diligence, it was not practicable to proceed in juvenile court before his eighteenth birthday because the previous transfer order was reversed.

## A.      Standard of Review

We review the trial court's findings of fact concerning a transfer decision under traditional sufficiency of the evidence principles. *In re J.G.*, 495 S.W.3d 354, 369 (Tex. App.—Houston [1st Dist.], pet. filed) (citing *Moon*, 451 S.W.3d at 47). Under a legal sufficiency challenge, we credit evidence favorable to the challenged finding and disregard contrary evidence unless a reasonable factfinder could not reject the evidence. *Id.* at 369–70 (citing *Moon v. State*, 410 S.W.3d 366, 371 (Tex. App.—Houston [1st Dist.] 2013), *aff'd*, 451 S.W.3d 28 (Tex. Crim. App. 2014)). If there is more than a scintilla of evidence to support the finding, the no-evidence challenge fails. *Id.* at 370. Under a factual sufficiency challenge, we consider all of the evidence presented to determine if the court's finding is so against the great

weight and preponderance of the evidence as to be clearly wrong or unjust. *Id.* (citing *Moon*, 410 S.W.3d at 371).

If the findings of the juvenile court are supported by legally and factually sufficient proof, then we review the ultimate waiver decision under an abuse of discretion standard. *Moon*, 451 S.W.3d at 47. As with any decision that lies within the discretion of the trial court, the salient question is not whether we might have decided the issue differently. *Id.* at 49. Instead, we ask whether the juvenile court's transfer decision was "essentially arbitrary, given the evidence upon which it was based, or [whether] it represent[ed] a reasonably principled application of the legislative criteria." *In re J.G.*, 495 S.W.3d at 370 (quoting *Moon*, 451 S.W.3d at 47).

**B.    Applicable Law**

In order to transfer H.Y., the juvenile court had to make five findings pursuant to section 54.02(j):

- He was 18 years of age or older;

- He committed the alleged robbery when he was 14 or older but younger than 17;

-  He had not been adjudicated;

- By a preponderance of the evidence "after due diligence of the state it was not practicable to proceed in juvenile court before [his] 18th birthday . . . because . . . a previous transfer order was reversed by an appellate court," and

22

- There is probable cause to believe H.Y. committed the robbery.

*See* Tex. FAM. CODE § 54.02(j).

## C. Analysis

The trial court made findings supporting the five required 54.02(j) factors. H.Y. challenges the sufficiency of the evidence supporting two of the findings in the juvenile court's order: that there was probable cause he committed the offense and that the State acted with due diligence.

### 1. Probable cause

With respect to probable cause, the trial court found:

> [T]here is probable cause to believe that [H.Y.] committed the offense alleged.

H.Y. argues that insufficient evidence supports the juvenile court's probable cause finding because his first nine issues are meritorious and the evidence supporting the finding was improperly admitted. However, we have concluded that H.Y.'s first nine issues are not meritorious because the complained-of evidence was admitted through the unobjected-to probation report. H.Y. does not otherwise argue that the evidence is insufficient to support the trial court's probable cause finding.

Among other things, the evidence at the transfer hearing showed that H.Y. matched the description initially given by the complainant to police. There was also evidence that H.Y. was driving the suspect vehicle and fled from police when pursued. The evidence also showed that the complainant identified H.Y. as the

person who pointed a gun at him during the robbery and H.Y. was in possession of a pistol magazine when he was apprehended.

Crediting evidence favorable to the probable cause finding and disregarding contrary evidence unless a reasonable factfinder could not, there is more than a scintilla of evidence supporting the juvenile court's probable cause finding. *See Moon*, 410 S.W.3d at 371; *see also In re C.C.*, 930 S.W.2d 929, 933 (Tex. App.– Austin 1996, no pet.) ("Probable cause exists where there are sufficient facts and circumstances to warrant a prudent person to believe the suspect committed the offense."). Likewise, considering all of the evidence presented, the juvenile court's probable cause finding is not so against the great weight and preponderance of the evidence as to be clearly wrong or unjust. *See id.* Accordingly, we hold that the juvenile court's probable cause finding is supported by legally and factually sufficient evidence. *See In re J.G.*, 495 S.W.3d at 374 (juvenile court's probable cause finding supported by sufficient evidence where evidence showed juvenile walked up to complainant with another man who exhibited firearm and demanded complainant's property, robbers fled scene in car which they crashed, complainant's property was found in car, and complainant identified juvenile as one of robbers).

### 2. Due diligence before H.Y.'s eighteenth birthday

The State filed its original complaint against H.Y. in juvenile court in March 2013, when he was sixteen years and one month old. In May 2013, the State moved

to transfer H.Y.  The trial court held a hearing on the transfer motion and signed the first transfer order in July 2013.  H.Y. was transferred to the criminal district court and in June 2014, pleaded guilty in exchange for the State's recommendation of 10 years' imprisonment.  The trial court accepted H.Y.'s plea and sentenced him to 10 years' imprisonment.  H.Y. filed his notice of appeal on June 25, 2014, when he was seventeen years and four months old.  On appeal, he challenged the transfer order, and in September 2015, when H.Y. was eighteen years and seven months old, this Court reversed the transfer order, vacated the criminal district court's judgment, and remanded the case to the juvenile court.  In November 2015, the State moved to transfer H.Y. a second time, mistakenly relying again on section 54.02(a), which governed transfer of those under 18.  On April 1, 2016, H.Y. responded to the transfer motion and objected that the State was seeking transfer based on section 54.02(a), even though H.Y. was over 18.  Twelve days later, the State amended is motion to seek transfer under section 54.02(j), governing transfer of those over 18.  The transfer hearing was held a month later, in May 2016, and the juvenile court signed the second transfer order in June 2016.

> With respect to due diligence, the trial court found:
>
> That by a preponderance of the evidence after due diligence of the State it was not practicable to proceed in juvenile court before the 18th birthday of the said [H.Y.] because a previous transfer order was reversed by an appellate court.

25

This finding tracks section 54.02(j)(4)(B)(iii), which provides that the juvenile court may transfer a person after his 18th birthday if, among other things:

> (4) the juvenile court finds from a preponderance of the evidence that:
>
> . . .
>
> > (B) after due diligence of the state it was not practicable to proceed in juvenile court before the 18th birthday of the person because:
> >
> > . . .
> >
> > (iii) a previous transfer order was reversed . . . .

TEX. FAM. CODE § 54.02(j)(4)(B)(iii). The juvenile court, in its findings of fact and conclusions of law, also found that "[t]he State exercised due diligence throughout the pendency of this case by seeking discretionary transfer in a timely fashion before [H.Y.] turned 18, [and] proceeding to a hearing before [H.Y.] turned 18," that "the State could not proceed in juvenile court before the 18th birthday of [H.Y.] because it could not have foreseen that the previous transfer order would be reversed by an appellate court after [H.Y.] turned eighteen.]," and that "[t]he State exercised due diligence . . . by seeking discretionary transfer in a timely fashion before the respondent turned 18, proceeding to a hearing before the respondent turned 18, and by filing the 3rd Amended request to seek waiver of jurisdiction as soon as practicable after the First Court of Appeals reversed the original transfer order . . . ."

H.Y. argues that there is insufficient evidence to support the trial court's finding that the State demonstrated due diligence in seeking transfer before he turned

26

18. Specifically, H.Y. argues that the statute's use of the term "the state" in section 54.02(4)(B) should be construed broadly to include not just the prosecution, but "the juvenile appellate scheme," which he argues caused unreasonable delay by requiring him to wait until his criminal conviction became final before appealing his original transfer order, which was reversed after H.Y. turned 18.

When construing a statute, we attempt to ascertain and effectuate the Legislature's intent. *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003). We start with the plain and ordinary meaning of the statute's words. *Id.* As relevant here, the statute provides that a juvenile court my transfer a person who is 18 or older if the juvenile court finds that "after due diligence of the state it was not practicable to proceed in juvenile court before [his] 18th birthday . . . because . . . a previous transfer order was reversed by an appellate court." TEX. FAM. CODE § 54.02(j)(4)(B)(iii).

"The state" is not defined by section 54.02(j)(4)(B). However, the Court of Criminal Appeals recently considered the meaning of the term "the state" in section 54.02(j)(4)(A), which provides an alternate basis for transfer under section 54.02(j)(4), if the juvenile court finds from a preponderance of the evidence that:

> for a reason beyond the control of the state it was not practicable to proceed in juvenile court before the 18th birthday of the person . . . .

*Id.* § 54.02(j)(4)(A). *See Moore v. State*, – S.W.3d –, No. PD-1634-14, 2016 WL 6091386, *_ (Tex. Crim. App. Oct. 19, 2016). In *Moore*, due to the heavy case load

27

of investigating detectives, a sexual assault complaint was not forwarded to the district attorney until almost two years after it was first reported. *Id.* The defendant was 16 at the time of the first report but had turned 18 by the time the case was forwarded, although the detectives believed the defendant was still 17 due to an error in the paperwork. *Id.* The State moved to transfer and argued that any delay occasioned by the detectives' caseload and their mistaken belief due to the paperwork error should not be considered when determining whether it was practicable for "the state" to proceed in juvenile court before the defendant's eighteenth birthday. *Id.* The juvenile court granted the transfer, but the court of appeals concluded that "the state" included law enforcement and prosecution, and that the reasons for delay presented by the State—the detectives' heavy caseload and the paperwork error—were not "reasons beyond the State's control." *Id.* The Court of Criminal Appeals agreed that the plain meaning and common usage of "the state" as used in section 54.02(j)(4)(A) referred to "law enforcement and the prosecution," and affirmed. *Id.* We assume that when the Legislature uses the same term more than once in the same statute, it intends the same meaning, unless a different meaning is apparent from the text. *See Liverman v. State*, 447 S.W.3d 889, 891 (Tex. App.—Fort Worth 2014, no pet.) (every word in statute is presumed to have particular meaning, and use of different words indicates different meaning intended). Accordingly, the term "the state" in section 54.02(j)(4)(B)(iii) presumptively means

28

"law enforcement and prosecution," and not the more expansive definition advocated by H.Y.

Moreover, section 54.02(j)(4)(B)(iii) expressly recognizes that one reason a person may not be transferred by the age of 18 is because an initial transfer order is reversed. To broadly interpret the term "the state" as used in section 54.02(j)(4)(B)(iii) to include "juvenile appellate scheme," therefore, would be internally inconsistent. Section 54.02(j)(4)(B)(iii) could not both permit a certain procedure—transferring someone who had reached the age of 18 after the reversal of a previous transfer order—and define that procedure as contrary to it, i.e., not demonstrating due diligence. *Cf. In re J.G.*, 495 S.W.3d at 371 (where statute permitted procedure, fact that State followed procedure could not be evidence of lack of due diligence). Accordingly, we reject H.Y.'s proposed definition of "the state" in section 54.02(j)(4)(B)(iii) as including the "juvenile appellate scheme."

H.Y. suggests the two-month period between the filing of the complaint and the first motion to transfer, and the four-month period that elapsed from the filing of the complaint to the first transfer hearing, were too long and demonstrate a lack of due diligence on the part of the State. He also argues that the fact that the juvenile court's first transfer order was a "boilerplate order" that was subject to reversal is evidence of a lack of due diligence. And he argues that the State did not demonstrate due diligence after remand because the State erroneously moved to transfer him

29

again based upon section 54.02(a), and did not amend the motion to seek transfer under section 54.02(j) until April 2016, seven months after remand.

But this Court has previously affirmed a juvenile court's finding of due diligence where there was a two-month period between the filing of the original complaint and a motion to transfer, and a fourth-month period from the filing of the complaint to the first transfer hearing. *See In re J.G.*, 495 S.W.3d at 371. And, although the State did erroneously rely upon section 54.02(a) instead of 54.02(j) in its motion to transfer filed after remand, the State corrected this error less than two weeks after H.Y. pointed it out in his response, and the second transfer hearing was held within a month of the filing of that amended motion, eight months after remand. *See id.* (affirming due diligence finding where second transfer hearing was held eight months after remand). The juvenile court found that "[t]he State exercised due diligence throughout the pendency of this case by seeking discretionary transfer in a timely fashion before [H.Y.] turned 18, [and] proceeding to a hearing before [H.Y.] turned 18," that "the State could not proceed in juvenile court before the 18th birthday of [H.Y.] because it could not have foreseen that the previous transfer order would be reversed by an appellate court after [H.Y.] turned eighteen.]," and that "[t]he State exercised due diligence . . . by seeking discretionary transfer in a timely fashion before the respondent turned 18, proceeding to a hearing before the respondent turned 18, and by filing the 3rd Amended request to seek waiver of

jurisdiction as soon as practicable after the First Court of Appeals reversed the original transfer order . . . ." Crediting evidence favorable to the findings regarding due diligence and disregarding contrary evidence unless a reasonable factfinder could not, there is more than a scintilla of evidence supporting those findings. *See Moon*, 410 S.W.3d at 371. Likewise, considering all of the evidence presented, the juvenile court's due diligence finding is not so against the great weight and preponderance of the evidence as to be clearly wrong or unjust. *See id.* Accordingly, we hold that the juvenile court's due diligence finding is supported by legally and factually sufficient evidence. *See In re J.G.*, 495 S.W.3d at 371–72 (sufficient evidence supported due diligence finding where, in first transfer proceeding which resulted in order that was reversed by appellate court after appellant turned 18, State moved to transfer juvenile four months after filing complaint and juvenile was transferred two months after filing of transfer motion); *see also In re B.R.H.*, 426 S.W.3d 163, 168 (Tex. App.—Houston [1st Dist.] 2012, orig. proceeding) (some evidence supported juvenile court's finding of due diligence where State moved to transfer juvenile five months after filing complaint and transfer hearing occurred two months after filing of transfer motion).

The juvenile court's challenged findings are supported by legally and factually sufficient evidence. *See Moon*, 451 S.W.3d at 47. The juvenile court's order indicates that it transferred H.Y. because it found that the section 54.02(j)

criteria were met. *See id.* H.Y. does not advance any argument to support his claim that the juvenile court abused its discretion in transferring him other than his sufficiency challenges. In light of our review of the sufficiency of the evidence, we hold that the juvenile court's decision represents a reasonably principled application of the section 54.02(j) factors and, therefore, was not an abuse of discretion. *See id.*; *see also In re J.G.*, 495 S.W.3d at 374 (holding juvenile court did not abuse discretion in waiving jurisdiction and entering second transfer order where sufficient evidence supported juvenile court's challenged 52.04(j) findings).

We overrule H.Y.'s eleventh issue.

## Conclusion

We affirm the juvenile court's order.


Rebeca Huddle
Justice

Panel consists of Justices Massengale, Brown, and Huddle.