**Affirmed and Opinion filed February 2, 2023.**



In The

# Fourteenth Court of Appeals

**NO. 14-22-00615-CV**
**NO. 14-22-00634-CV**

## IN THE MATTER OF A.W.

**On Appeal from the 315th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2021-00678J & 2021-01242J**

## OPINION

This is an accelerated appeal from the juvenile court's order waiving jurisdiction and transferring A.W. to criminal district court to stand trial as an adult. In his only issue on appeal, A.W. argues that the juvenile court improperly admitted evidence—over his hearsay objections—at the transfer hearing. We affirm.

### I.    BACKGROUND

On April 28, 2021, appellee the State of Texas filed its original petition in cause number 2021-00678J alleging that A.W. committed delinquent conduct,

alleged to have been committed on or about April 26, 2021, by assault on Timothy Snyder, a public servant. On August 9, 2021, the State filed its original petition in cause number 2021-01242J alleging that A.W. committed delinquent conduct, aggravated sexual assault against B.H.[1], alleged to have been committed on or about July 11, 2021.[2]

On October 4, 2021, the State filed amended petitions requesting that the juvenile court transfer both of A.W.'s cases to felony district court.[3] The individuals below testified at the transfer hearing on June 27, 2022; most of the underlying facts are undisputed by A.W.

*Transfer Hearing Testimony*

**B.H.**

B.H. is a therapist with the Harris County Leadership Academy, a juvenile probation facility in Katy, Texas. B.H. was the only therapist working on July 11, 2021. A.W., one of the juvenile residents at that facility, had made multiple requests to speak with B.H. A.W. sent the guards to go get B.H. for a therapy session. B.H. notified the guards via radio that she was retrieving A.W. from his unit, and then escorted A.W. from his unit to her office for a fifteen-minute therapy session.

B.H.'s office was formerly a cell constructed of concrete walls and a heavy metal door which locked automatically upon closing. B.H. testified that during therapy sessions with the residents she always kept the door open for safety purposes.

---

[1] Both parties refer to the complainant as "B.H."

[2] Trial cause number 2021-00678J corresponds to appellate case 14-22-00615-CV and trial cause number 2021-01242J corresponds to appellate case 14-22-00634-CV.

[3] Appellant was fifteen years old at the time of the alleged offenses.

When B.H. began the therapy session with A.W. in her office, A.W. laughed and told her that a fight was going to break out in his unit. B.H. continued to converse with A.W. until the end of the therapy session. When B.H. informed A.W. that it was time to return to his unit, A.W. stalled and kept asking B.H. questions. B.H. attempted several times to radio the guards for clearance to return A.W. to his unit, but she received no response because all of the guards had responded to a fight that had broken out in the unit. B.H. eventually decided to escort A.W. back to his unit without obtaining clearance.

As B.H. exited the office, A.W. asked her to retrieve the telephone number of a relative for him. When she returned to her desk, A.W. kicked the doorstop causing the office door to close and lock. A.W. then seized the radio from the desk and ripped out the battery. A.W. approached B.H. with his fists balled, backed her into the wall, and pulled her legs out from underneath her, causing her to fall to the floor. When B.H. screamed, A.W. got on top of her, grabbing her neck with one hand and covering her mouth with the other. A.W. lifted a desk exercise bike over B.H's head and threatened to bash her head in and kill her if she screamed. B.H. testified extensively and in graphic detail that A.W. forced her to remove her clothing, attempted to penetrate her vagina with his sexual organ, and forced B.H. to place her mouth on his sexual organ.

Afterwards, A.W. turned the office light back on and told B.H. to get dressed. He asked her where she lived and threatened to kill her and her family if she told anyone about the sexual assault. Before they left the office, A.W. grabbed all of the pens from the desk and hid them in his pants. Then A.W. allowed B.H. to unlock the door and she escorted him back to his unit. Once A.W. had been returned to his unit, B.H. immediately went to the guard room and told the supervisor that A.W. had sexually assaulted her and stolen her pens; B.H.

3

mentioned the stolen pens because she was afraid that A.W. was going to "arm all the people in the unit and maybe attack the guards." The police were contacted and B.H. was transported to the hospital for a sexual assault examination.

**Leneka Winters**

Leneka Winters testified that she is a deputy investigator with the Harris County Sheriff's Office Adult Sex Crimes Unit. Winters averred that during B.H.'s sexual assault examination, swabs were collected from B.H.'s body. A sample of A.W.'s DNA was also obtained via a search warrant. His DNA was compared to the evidence collected during the sexual assault examination, and the results showed that his DNA was present on B.H.'s vagina, rectum, neck, hands, right breast, and on her underwear. A.W. was charged with aggravated sexual assault and relocated to the Harris County Juvenile Detention Center.

Winters also testified concerning an aggravated assault committed by A.W. in Georgia in April of 2019 while he was under court supervision. Counsel for A.W. asserted a hearsay objection, which the trial court overruled. According to Winters, A.W. approached a thirteen-year-old female and offered her a cigarette. The girl refused and turned to go back inside her apartment, and A.W. chased after her. She managed to push A.W. back before closing the door. A.W. waited outside the complainant's apartment for some time before she eventually left the apartment again. At that point, A.W. threatened the complainant with a knife and she fled back into the apartment, notified her parents, and contacted 911. A.W. was charged with aggravated assault.

Over A.W.'s objection, the State also offered and admitted the following exhibits related to the Georgia incident:

- the thirteen-year-old complainant's written voluntary statement

4

describing the aggravated assault;

- A.W.'s admission of guilt—signed on April 18, 2019—to one count of aggravated assault;

- the April 22, 2019, order from the juvenile court of Fulton County, Georgia adjudicating A.W. of one count of aggravated assault in case number 19DL01583; and

- the May 9, 2022, order from the juvenile court of Fulton County, Georgia closing case number 19DL01583 after jurisdiction was transferred to the juvenile court of Harris County, Texas.

**Stefanie Semper**

Stefani Semper testified that she was formerly a behavioral therapist at the Harris County Leadership Academy. On February 3, 2020 there was a disturbance in A.W.'s unit, and Semper was asked to speak with A.W. for purposes of de-escalation. When her session with him ended and Semper told A.W. it was time to return to his unit, A.W. refused to return to his unit. A.W. kicked the door stand causing the office door to shut and lock. Semper went to her desk to retrieve her keys, but A.W. moved directly in front of her and blocked her path. A.W. then attempted to touch Semper's face, but she slapped his hand away and pushed him. Semper pleaded with A.W. to stop what he was doing. She convinced A.W. to sit down and let her open the office door so she could use the restroom. Semper was able to unlock the door and she returned A.W. to his unit and informed her coworkers of the incident.

**Timothy Snyder**

Snyder works with the Harris County Juvenile Probation Department as a correction officer. On April 26, 2021, he was working at the Harris County

Leadership Academy. Snyder was assigned to unit 2, the same unit as A.W. While in the dayroom, Snyder asked A.W. to get out of his chair. A.W. refused, and eventually slapped Snyder.

**Florencia Iturri, PhD**

Florencia Iturri, a licensed staff psychologist at the Harris County Juvenile Probation Forensic Unit with a Masters in clinical psychology, conducted a certification evaluation of A.W. In making her evaluation, Iturri reviewed all of A.W.'s probation records, offense reports, medical records, and his prior evaluations. Iturri took several factors into account, including A.W.'s dangerousness, sophistication, maturity, and his amenability to treatment. She testified that A.W. demonstrates an average level of maturity compared with other adolescents his age.

Concerning A.W.'s sophistication, Iturri clarified that intellectual sophistication refers generally to A.W.'s intelligence, his IQ, and his ability to think things through. Criminal sophistication, on the other hand, refers more specifically to how A.W. behaves when committing acts that could be considered criminal. Iturri averred that A.W.'s level of general intellectual sophistication is below average. Speaking on A.W.'s criminal sophistication and dangerousness, Iturri opined:

> I also judged [A.W.] to have an average level of criminal sophistication when the offense is not considered. When the offense is considered, his criminal sophistication increases to a moderately high level. In terms of dangerousness, both when the offense is not considered and when the offense is considered, he is judged to have a high level of dangerousness.

Iturri additionally testified that since December of 2017, A.W. has been placed in juvenile facilities on twenty-two different occasions. For the majority of

his placements in Harris County, A.W. was removed for assaulting staff members prior to A.W.'s successful completion of his placement term. During his time in juvenile probation facilities, A.W. accumulated eighty different incident reports for assaulting or threatening to assault residents and staff members. Iturri noted that even after the charged offenses occurred, A.W. continued to receive reports for sexually inappropriate behavior on numerous occasions. Iturri also admitted that A.W.'s behavior has been "escalating." Based on A.W.'s prior history, Iturri judged A.W.'s treatment amenability to be in the moderately low range.

Iturri did not specifically give an opinion as to whether the trial court should waive its jurisdiction as to A.W., but did opine that A.W. would likely benefit from a more structured environment. Iturri admitted that the Texas Department of Criminal Justice for adults is more structured than the Texas Juvenile Justice Department.

**Jennifer Hunley**

Jennifer Hunley, the facility administrator for the Leadership Academy, testified in-depth concerning A.W.'s prior juvenile record.

On April 5, 2018, A.W. was adjudicated for unauthorized use of a motor vehicle and was sent to the Burnett-Bayland Reception Center ("BBRC"), a post-adjudicative facility for children. A.W. was released to live with his father in Georgia between December of 2018 and May of 2019.

On June 6, 2019, A.W. was adjudicated for another charge of unauthorized use of a motor vehicle. A.W. was sent to the BETA unit of the BBRC, which had a trauma-informed program specifically designed for young offenders. On August 12, 2019, A.W. was returned to detention after harassing a public servant. A.W. was again released to his father's custody but was subsequently returned to

7

detention after engaging in disorderly conduct. A.W. was adjudicated on January 21, 2020 and sent to the Harris County Leadership Academy, where he received therapy based on an individualized treatment plan. After being released from the Leadership Academy into his father's custody, A.W. was subsequently detained and adjudicated for evading arrest with a motor vehicle. A.W. was sent to the Harris County Youth Village to participate in a trauma-based program. While at that facility, A.W. was charged with assault of a public servant and returned to detention. A.W. was adjudicated and sent to AMIKIDS, a private placement facility in the Rio Grande Valley which is occasionally used if other juvenile facilities have not worked. Due to behavioral issues at AMIKIDS, A.W. was again detained, adjudicated, and sent to the Leadership Academy for a nine-month trauma-based therapy program. It was during his time at the Leadership Academy that A.W. assaulted probation officer Snyder and sexually assaulted B.H.

**Mark Salinas**

Deputy Mark Salinas, a juvenile investigator for Precinct 1 of the Harris County Sheriff 's Office, testified that he received six reports of A.W. exposing himself to female staff members between August 2021 and October 2021, which was after he sexually assaulted B.H. On August 12, 2021, A.W. exposed his penis and attempted to masturbate in front of a youth development coach. On August 22, 2021, A.W. exposed himself to a nurse. The following day, A.W. exposed himself to a teacher. On September 30, 2021, A.W. masturbated in front of a therapist. On October 2, 2021, he dropped his pants and masturbated in front of another female youth development coach. And finally, on October 25, 2021, A.W. masturbated while on a virtual tele-therapy appointment with a different therapist.

On August 23, 2022, following the combined certification hearing for both cases, the trial court signed orders granting the State's request, waived its original,

8

exclusive jurisdiction in cause numbers 2021-00678J and 2021-01242J, and transferred those causes to felony district court. In both cases, A.W. timely filed his notice of appeal on August 25, 2022.

## II. ANALYSIS

### A. STANDARD OF REVIEW & APPLICABLE LAW

"We review a trial court's decision to admit evidence for an abuse of discretion." *Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 235 (Tex. 2011). The juvenile court's ruling to admit or exclude evidence at a waiver and transfer hearing under § 54.02 of the Family Code is also reviewed for an abuse of discretion. *See In re H.Y.*, 512 S.W.3d 467, 473 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). An abuse of discretion only occurs if the court's ruling is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Id.* The erroneous admission of evidence warrants reversal only if the error probably caused the rendition of an improper judgment. *See* Tex. R. App. P. 44.1; *In re H.Y.*, 512 S.W.3d at 473.

Under § 54.02(a) of the Texas Family Code, the juvenile court may waive its exclusive original jurisdiction and transfer a child to criminal district court if: (1) the court determines there is probable cause to believe the child committed the offense alleged; and (2) the court determines that "because of the seriousness of the offense alleged or the background of the child the welfare of the community requires criminal proceedings." Tex. Fam. Code Ann. § 54.02(a)(3).

### B. APPLICATION

A.W. argues that the trial court reversibly erred when it admitted evidence— over his hearsay objections—related to the incident of A.W. allegedly threatening a young girl with a knife in Georgia. According to A.W., the Texas Rules of

Evidence are applicable even in discretionary transfer hearings held under the Texas Family Code § 54.02. *See* Tex. Fam. Code Ann. § 54.02. A.W. acknowledges that several courts of appeal have concluded that in juvenile transfer proceedings, the Texas Rules of Evidence do not apply and that juvenile courts may consider hearsay evidence. *See Grant v. State*, 313 S.W.3d 443, 444 (Tex. App.—Waco 2010, no pet.) ("[A] juvenile court can determine probable cause in a nonadversary preliminary hearing through the use of hearsay besides written and oral testimony."); *McKaine v. State*, 170 S.W.3d 285, 289 (Tex. App.—Corpus Christi–Edinburg 2005, no pet.) (concluding that juvenile court may consider hearsay evidence because "[s]trict rules of evidence are not applied in transfer proceedings."); *In re J.A.W.*, 976 S.W.2d 260, 264 (Tex. App.—San Antonio 1998, no pet.) ("Section 54.02(e) of the Family Code, which allows the court to consider written reports from probation officers, professional court employees, and professional consultants, provides an explicit exception to the hearsay rule in a transfer to criminal court proceeding."); *In re G.B.B.*, 638 S.W.2d 162, 164 (Tex. App.—Houston [1st Dist.] 1982, no writ) ("Appellant's argument, concerning the hearsay [evidence] . . . has no merit when directed at a juvenile transfer hearing. The sole purpose of such a hearing is to determine whether, in the best interest of the child and society, the minor may be rehabilitated, or if he should be criminally tried as an adult. No determination is made of the minor's guilt, punishment or delinquency. Because such a hearing is dispositional, rather than adjudicational in nature, a juvenile court may consider hearsay reports . . . ."); *see also In re B.M.*, No. 01-18-00898-CV, 2019 WL 1388561, at *13 (Tex. App.—Houston [1st Dist.] Mar. 28, 2019, no pet.) (mem. op.) ("And because the transfer hearing is a nonadversary preliminary hearing, the juvenile court may rely upon hearsay as well as written and oral testimony in making its probable-cause findings.").

10

Our court has historically reached the same conclusion regarding a juvenile court's reliance on hearsay evidence in making its probable cause finding. *See In re S.J.M.*, 922 S.W.2d 241, 242 (Tex. App.—Houston [14th Dist.] 1996, no writ) ("Because a juvenile transfer hearing is dispositional, rather than adjudicational in nature, a juvenile court may consider hearsay reports without violating the juvenile's right of confrontation."); *L.M.C. v. State*, 861 S.W.2d 541, 542 (Tex. App.—Houston [14th Dist.] 1993, no writ) ("The juvenile court determines probable cause in a nonadversary preliminary hearing. The juvenile court may use hearsay as well as written and oral testimony.") (internal citations omitted); *In re D.W.L.*, 828 S.W.2d 520, 524–25 (Tex. App.—Houston [14th Dist.] 1992, no writ) ("Further, the trial court can determine probable cause in a nonadversary preliminary hearing through the use of hearsay besides written and oral testimony. The judge does not determine appellant's innocence or guilt at the hearing, but merely evaluates whether he should be tried as a juvenile or adult in subsequent proceedings.").

Nevertheless, A.W. argues that many of these cases relied on a prior version of § 54.02, which allowed the trial court to consider "whether there is evidence on which a grand jury may be expected to return an indictment." Act of June 16, 1973, 63rd Leg., R.S., ch. 544, § 54.02(f)(3), 1973 Tex. Gen. Laws 1460, 1477, formerly Tex. Fam. Code Ann. § 54.02(f)(3). But effective January 1, 1996, that language was removed from the statute. Act of May 27, 1995, 74th Leg., R.S., ch. 262, § 34, 1995 Tex. Gen. Laws 2517, 2533. Thus, A.W. asserts that the removal of that language from § 54.02 means that the Texas Rules of Evidence now apply in juvenile transfer hearings.

The First Court of Appeals has addressed a similar argument. *See Navarro v. State*, No. 01-11-00139-CR, 2012 WL 3776372, at \*6 (Tex. App.—Houston [1st

Dist.] Aug. 30, 2012, pet. ref'd) (mem. op., not designated for publication). Relying on our court's decision in *L.M.C.*, the First Court of Appeals in *Navarro* ultimately concluded that due to the nature of a transfer hearing, a juvenile court may still rely on hearsay evidence, despite the changes to § 54.02:

> Appellant notes that the Juvenile Justice Code was amended to delete the provision that the juvenile court, during a transfer hearing, "shall consider, among other matters . . . whether there is evidence on which a grand jury may be expected to return an indictment." However, as noted in *L.M.C.*, the consideration of grand-jury evidence was only one justification for not requiring juvenile courts to rule on the admissibility of evidence during a transfer hearing. The Texas Family Code still only requires a juvenile court to determine whether there is probable cause that the juvenile committed the alleged offense. Thus, a transfer hearing remains a "nonadversarial preliminary hearing" and "appellant's rights will be fully protected when the case reaches trial." Accordingly, we opt to agree with our sister court in *L.M.C.* and hold that the juvenile court was not required to resolve the admissibility of appellant's statements before the transfer hearing.

*Id.* (citing *L.M.C.*, 861 S.W.2d at 541–42) (internal citations omitted); *see State v. Lopez*, 196 S.W.3d 872, 874 (Tex. App.—Dallas 2006, pet. ref'd) (concluding juvenile defendant was not entitled to jury trial at transfer hearing because, during such hearing, juvenile court "is not required to conform to all of the requirements of a criminal trial or even of the usual administrative hearing" and transfer hearing "is comparable to a criminal probable cause hearing and the court need not resolve evidentiary conflicts beyond a reasonable doubt").

We agree with the reasoning of *Navarro* and *L.M.C.* that a juvenile court in a transfer hearing is not required to resolve the admissibility of hearsay evidence offered against the juvenile because of the non-adversarial nature of a transfer hearing. *See L.M.C.*, 861 S.W.2d at 541–42; *see also Navarro*, 2012 WL 3776372, at *6. A juvenile court may consider hearsay evidence in deciding whether to

12

waive its exclusive original jurisdiction and transfer a child to criminal district court because the juvenile's rights will be fully protected at trial. *See Grant*, 313 S.W.3d at 444; *Lopez*, 196 S.W.3d at 874; *In re S.J.M.*, 922 S.W.2d at 242; *L.M.C.*, 861 S.W.2d at 542; *In re D.W.L.*, 828 S.W.2d at 524–25; *see also In re B.M.*, 2019 WL 1388561, at \*13; *Navarro*, 2012 WL 3776372, at \*6. Accordingly, we conclude that the trial court did not err in admitting the evidence related to the incident in Georgia involving A.W.

Moreover, assuming without deciding that the juvenile court erred in admitting the hearsay evidence, A.W. has not demonstrated that he has been harmed by the alleged error. *See* Tex. R. App. P. 44.1. There was an abundance of evidence to support the trial court's finding that A.W. committed the offenses as charged and that he should be tried as an adult, based on the seriousness of the offenses committed and considering A.W.'s background. *See* Tex. Fam. Code Ann. § 54.02(a)(3). There was ample evidence and testimony to support the nature and seriousness of the offenses A.W. committed against Snyder and B.H. Additionally, the trial court could consider A.W.'s extended history of escalating offenses, the eighty incident reports involving A.W. threatening or assaulting other residents and staff members, and the six times A.W. exposed himself to female staff—all of which was admitted without objection. The trial court also heard evidence from Iturri regarding A.W.'s high level of dangerousness, moderately high criminal sophistication, average maturity, and moderately low level of amenability to treatment. Thus, even without considering the Georgia incident, there is sufficient evidence to support the trial court's order transferring A.W. to criminal court, and A.W. has failed to demonstrate that the alleged error probably led to the rendition of an improper judgment. *See* Tex. R. App. P. 44.1; *In re H.Y.*, 512 S.W.3d at 473.

We overrule A.W's sole issue on appeal.

13

### III. CONCLUSION

We affirm the trial court's judgment.

/s/    Margaret "Meg" Poissant
Justice

Panel consists of Justices Wise, Jewell, and Poissant.