**Opinion issued February 20, 2020**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-18-01014-CR

————————————

## EX PARTE CAMERON MICHAEL MOON

On Appeal from the 182nd District Court
Harris County, Texas
Trial Court Case No. 1467534A

# O P I N I O N

On December 18, 2008, a juvenile court waived jurisdiction over sixteen-year old Cameron Michael Moon and certified him to stand trial as an adult in criminal district court for the charged offense of murder. After a jury convicted him and assessed his punishment at thirty years' imprisonment, Moon appealed. This Court held that the juvenile court abused its discretion in waiving jurisdiction over Moon,

vacated the district court's judgment, and dismissed the case. *See Moon v. State*, 410 S.W.3d 366, 378 (Tex. App.—Houston [1st Dist.] 2013), *aff'd,* 451 S.W.3d 28 (Tex. Crim. App. 2014). On the State's petition for discretionary review, the Court of Criminal Appeals affirmed this Court's judgment. *See Moon v. State*, 451 S.W.3d 28 (Tex. Crim. App. 2014).

On remand, the juvenile court again waived jurisdiction over Moon, who was then over the age of eighteen, and recertified him to stand trial as an adult. Moon filed a motion to dismiss and an application for writ of habeas corpus in district court, both of which the trial court denied.

Moon now appeals the trial court's denial of pretrial habeas corpus relief. In eight points of error, he contends that (1) the State presented legally and factually insufficient evidence to prove the elements required under section 54.02(j) of the Family Code; (2) the juvenile court's findings under section 54.02(j) were insufficient to allow it to waive jurisdiction; (3) the criminal district court had jurisdiction at the time it originally adjudicated the charged offense; (4) the State introduced legally and factually insufficient evidence, and did not obtain the necessary findings, to establish that reversal of the previous transfer order made it impracticable for the State to proceed in juvenile court before Moon turned eighteen; (5) the State introduced legally and factually insufficient evidence, and did not obtain the necessary findings, to establish that it exercised due diligence; (6) the

application of section 54.02(j) to recertify Moon deprived him of the process to which he was originally due under section 54.02(a), (d), and (f) in violation of the United States and Texas Constitutions; (7) the application of the standards for certification under section 54.02(j) violated the ex post facto doctrine; and (8) the recertification of Moon under section 54.02(j) violated the equal protection and double jeopardy doctrines.

We affirm the trial court's denial of the pretrial writ of habeas corpus.

## Background

### A. Original Certification[1]

On November 19, 2008, the State filed a petition in the 313th Juvenile Court alleging that Moon engaged in delinquent conduct by committing murder. Moon was sixteen years old at the time the State filed its petition. On the same date, the State also filed a motion under sections 54.02(a) and (f) of the Family Code, asking the juvenile court to waive its exclusive original jurisdiction and to transfer Moon to criminal district court to be tried as an adult. The State alleged as grounds for the transfer that because of the seriousness of the offense alleged, the welfare of the

---

[1] A detailed recitation of the factual and procedural background of this case through Moon's original certification and subsequent conviction in the criminal district court can be found in the opinions of this Court and the Court of Criminal Appeals. *See Moon v. State*, 410 S.W.3d 366 (Tex. App.—Houston [1st Dist.] 2013), *aff'd*, 451 S.W.3d 28 (Tex. Crim. App. 2014).

community required waiver of juvenile jurisdiction. The juvenile court granted the State's request for a hearing on the motion.

On December 17, 2008, the juvenile court held a certification hearing. At the conclusion of the hearing, the juvenile court granted the State's motion to waive jurisdiction. On December 18, 2008, the juvenile court signed and entered a written order waiving its jurisdiction and transferring the case to the 178th District Court. The order waiving jurisdiction stated that the juvenile court had determined "that there is probable cause to believe that the child committed the OFFENSE alleged and that because of the seriousness of the OFFENSE, the welfare of the community requires criminal proceeding." The order further stated that "[i]n making that determination, the Court has considered among other matters:

1. Whether the alleged OFFENSE WAS against person or property, with the greater weight in favor of waiver given to offenses against the person;

2. The sophistication and maturity of the child;

3. The record and previous history of the child; and

4. The prospects of adequate protection of the public and the likelihood of reasonable rehabilitation of the child by use of procedures, services and facilities currently available to the Juvenile Court.

The juvenile court also specifically found that (1) Moon "is of sufficient sophistication and maturity to have intelligently, knowingly and voluntarily waived all constitutional rights heretofore waived[,] . . . to have aided in the preparation of

4

HIS defense and to be responsible for HIS conduct"; (2) that the offense alleged "WAS against the person of another"; and that (3) "there is little, if any, prospect of adequate protection of the public and likelihood of reasonable rehabilitation of" Moon "by use of procedures, services, and facilities currently available to the Juvenile Court."

Following his transfer to the criminal district court, Moon stood trial for the first-degree felony charge of murder. On April 19, 2010, the jury convicted Moon and assessed his punishment at thirty years' imprisonment.

On direct appeal, when Moon was twenty-one years old, this Court held that the juvenile court abused its discretion in waiving jurisdiction and certifying Moon to stand trial as an adult, vacated the district court's judgment, and dismissed the criminal proceedings. *Moon*, 410 S.W.3d at 378. On the State's petition for discretionary review, the Court of Criminal Appeals affirmed this Court's judgment, holding that the juvenile court, in an order waiving its original jurisdiction, must state both the reasons for waiving its jurisdiction and expressly set out the findings of fact that support those reasons. *Moon*, 451 S.W.3d at 50. Failure to do so may result in a finding that there is insufficient evidence to support the juvenile court's waiver of jurisdiction. *See id.* at 51–52. The Court found that the only reason specifically stated in the juvenile court's order to justify the waiver of jurisdiction was that the offense alleged was a serious one, and that the only fact specified in the

5

written transfer order in support of the reason was that the offense that Moon was alleged to have committed was an offense against the person of another. *See id.* at 50. The Court concluded that "a waiver of juvenile jurisdiction based on this particular reason, fortified only by this fact, constitutes an abuse of discretion." *Id.*

## B. Recertification

Upon remand to the juvenile court, the State filed a second motion to waive jurisdiction, this time pursuant to section 54.02(j) of the Family Code, which applies to those who are eighteen years of age or older at the time of the certification hearing. Moon filed a response to the State's motion and a brief in support of his motion to dismiss juvenile proceeding and opposition to the State's motion to certify.

On April 9, 2015, the juvenile court held a certification hearing. At the hearing, Moon argued that the State could not prove the mandatory elements of section 54.02(j) and that section 54.02(j) violated his constitutional rights to due process and equal protection as well as the prohibition against double jeopardy. Following a certification hearing, the juvenile court granted the State's second motion, recertified Moon, and denied Moon's motion to dismiss. On May 7, 2015, the juvenile court signed an order waiving jurisdiction and transferring the case to the criminal district court. In its order, the juvenile court found that:

(1) Moon is 18 years of age or older;

(2) Moon was 10 years of age or older and under 17 years of age at the time he is alleged to have committed an offense under Penal Code section 19.02;

(3) that no adjudication concerning the offense has been made and no adjudication hearing concerning the offense has been conducted;

(4) that by a preponderance of the evidence after due diligence of the State it was not practicable to proceed in juvenile court before Moon's 18th birthday because a previous transfer order was reversed by an appellate court; and

(5) that there is probable cause to believe that Moon committed the offense alleged.

The order also incorporated the State's proposed findings of fact and conclusions of law which "specifically state the reasons for this waiver and decision to transfer the matter to criminal district court and are likewise certified by this Court."

On September 23, 2015, a grand jury indicted Moon for murder.[2] On June 7, 2018, Moon filed an application for a pretrial writ of habeas corpus challenging the constitutionality of Family Code section 54.02(j) and Code of Criminal Procedure article 44.47. Following a hearing, the criminal district court entered an order on October 24, 2018, denying Moon's pretrial habeas application and adopting the State's proposed findings of fact and conclusions of law. Moon timely filed his notice of appeal of the trial court's denial of pretrial habeas corpus relief.

---

[2] On August 18, 2015, Moon filed a petition for writ of mandamus which was denied by this Court.

7

## Juvenile Certification

Juvenile courts have exclusive original jurisdiction over cases involving delinquent conduct by children between ten and seventeen years old.  TEX. FAM. CODE §§ 51.02(2)(A), 51.04(a).  Delinquency proceedings against minors proceed in juvenile court under the Juvenile Justice Code.  *See id.* §§ 51.01–61.107.  A juvenile court may waive its exclusive original jurisdiction under certain conditions and allow transfer of the proceeding to a district court for criminal prosecution.  *Id.* § 54.02(a), (j).

What the State must prove to obtain transfer depends on whether the minor has reached the age of eighteen by the date of the transfer hearing.  Under section 54.02(a), the juvenile court may waive jurisdiction over a child under the age of eighteen if it finds:

(1) the child is alleged to have violated a penal law of the grade of felony;

(2) the child was:

(A) 14 years of age or older at the time he is alleged to have committed the offense, if the offense is a capital felony, an aggravated controlled substance felony, or a felony of the first degree, and no adjudication hearing has been conducted concerning that offense; or

(B) 15 years of age or older at the time the child is alleged to have committed the offense, if the offense is a felony of the second or third degree or a state jail felony, and no adjudication hearing has been conducted concerning that offense; and

8

(3) after a full investigation and a hearing, the juvenile court determines that there is probable cause to believe that the child before the court committed the offense alleged and that because of the seriousness of the offense alleged or the background of the child the welfare of the community requires criminal proceedings.

*Id.* § 54.02(a).  In determining whether the welfare of the community requires criminal proceedings, the juvenile court "shall consider, among other matters":

(1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person;

(2) the sophistication and maturity of the child;

(3) the record and previous history of the child; and

(4) the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.

*Id.* § 54.02(f).

The process for waiver is different if the defendant has passed his eighteenth birthday.  The juvenile court may waive jurisdiction when the person before the juvenile court has reached the age of eighteen if it finds:

(1) the person is 18 years of age or older;

(2) the person was:

(A) 10 years of age or older and under 17 years of age at the time the person is alleged to have committed a capital felony or an offense under Section 19.02, Penal Code;

(B) 14 years of age or older and under 17 years of age at the time the person is alleged to have committed an aggravated controlled

9

substance felony or a felony of the first degree other than an offense under Section 19.02, Penal Code; or

(C) 15 years of age or older and under 17 years of age at the time the person is alleged to have committed a felony of the second or third degree or a state jail felony;

(3) no adjudication concerning the alleged offense has been made or no adjudication hearing concerning the offense has been conducted;

(4) the juvenile court finds from a preponderance of the evidence that:

(A) for a reason beyond the control of the state it was not practicable to proceed in juvenile court before the 18th birthday of the person; or

(B) after due diligence of the state it was not practicable to proceed in juvenile court before the 18th birthday of the person because:

(i) the state did not have probable cause to proceed in juvenile court and new evidence has been found since the 18th birthday of the person;

(ii) the person could not be found; or

(iii) a previous transfer order was reversed by an appellate court or set aside by a district court; and

(5) the juvenile court determines that there is probable cause to believe that the child before the court committed the offense alleged.

*Id.* § 54.02(j).

Before January 1, 1996, the Juvenile Justice Code provided for interlocutory appeal from a juvenile court's transfer order. *Moon*, 451 S.W.3d at 39. In 1995, the Legislature amended the Juvenile Justice Code, striking a provision that permitted interlocutory appeal of a transfer order, and revising the Code to allow appeal of a

10

transfer order only in conjunction with the appeal of a conviction of the offense for which the defendant was transferred. *Id.* In 2015, the Legislature again amended the Juvenile Justice Code to reintroduce interlocutory appeal from a juvenile court's transfer order for orders issued on or after September 1, 2015. *See* Act of May 12, 2015, 84th Leg., R.S., ch. 74, § 3, 2015 Tex. Gen. Laws 1065, 1065. Because Moon's second transfer order was entered after January 1, 1996, but before September 1, 2015, article 44.47 applies to him.

## Juvenile Court's Waiver of Jurisdiction

In his first through fifth points of error, Moon challenges the sufficiency of the evidence presented by the State, and its failure to obtain necessary findings, to prove each of the elements under Family Code section 54.02(j) as well as the sufficiency of the juvenile court's findings on each element. Specifically, Moon contends that:

(1) the State presented legally and factually insufficient evidence to prove the elements required under section 54.02(j) of the Family Code;

(2) the juvenile court's findings under section 54.02(j) were insufficient to allow it to waive jurisdiction;

(3) the criminal district court had jurisdiction at the time it originally adjudicated the charged offense;

(4) the State introduced legally and factually insufficient evidence, and did not obtain the necessary findings, to establish that reversal of the previous transfer order made it impracticable for the State to proceed in juvenile court before Moon turned eighteen; and

11

(5) the State introduced legally and factually insufficient evidence, and did not obtain the necessary findings, to establish that it exercised due diligence.

In response, the State argues that none of Moon's first five points is cognizable on pretrial writ of habeas corpus and that Moon is instead attempting to mount a premature appeal and circumvent the statutory requirements of Code of Criminal Procedure 44.47. The State further argues that, even if Moon could prematurely attack the factual findings contained in the juvenile court's transfer order, his contentions fail on the merits.

## A. Pretrial Habeas

"Pretrial habeas, followed by an interlocutory appeal, is an extraordinary remedy." *Ex parte Perry*, 483 S.W.3d 884, 895 (Tex. Crim. App. 2016). Thus, "appellate courts have been careful to ensure that a pretrial writ is not misused to secure pretrial appellate review of matters that in actual fact should not be put before appellate courts at the pretrial stage." *Ex parte Ellis*, 309 S.W.3d 71, 79 (Tex. Crim. App. 2010) (quoting *Ex parte Doster*, 303 S.W.3d 720, 724 (Tex. Crim. App. 2010)); *Ex parte Estrada*, 573 S.W.3d 884, 891 (Tex. App.—Houston [1st Dist.] 2019, no pet.). "Neither a trial court nor an appellate court should entertain an application for writ of habeas corpus when there is an adequate remedy by appeal." *Ex parte Weise*, 55 S.W.3d 617, 619 (Tex. Crim. App. 2001); *see also Ex parte Smith*, 178 S.W.3d 797, 801 n.13 (Tex. Crim. App. 2005) ("[A] writ of habeas corpus cannot be used as

a substitute for an appeal or to serve the office of an appeal."). "Consequently, whether a claim is even cognizable on pretrial habeas is a threshold issue that should be addressed before the merits of the claim may be resolved." *Ex parte Ellis*, 309 S.W.3d at 79.

"A defendant may use a pretrial writ of habeas corpus only in very limited circumstances." *Ex parte Smith*, 178 S.W.3d at 801. "[A] pretrial writ application is not appropriate when resolution of the question presented, even if resolved in favor of the applicant, would not result in immediate release." *Ex parte Weise*, 55 S.W.3d at 619. The Court of Criminal Appeals has limited the use of pretrial habeas applications to issues that would result in immediate release and "ha[s] held that an applicant may use pretrial writs to assert his or her constitutional protections with respect to double jeopardy and bail," to challenge the facial constitutionality of the statute under which he or she is prosecuted, or to allege that the offense charged is barred by limitations. *Id*. at 619–621 (holding that as-applied constitutionality challenge to illegal dumping statute was not cognizable via pretrial habeas application); *see also Ex parte Arango*, 518 S.W.3d 916, 923–25 (Tex. App.— Houston [1st Dist.] 2017, pet. ref'd) (reversing denial of pretrial habeas application challenging order transferring juvenile defendant to criminal district court because order did not vest that court with jurisdiction pursuant to holding in *Moon*). "Pretrial habeas should be reserved for situations in which the protection of the applicant's

13

substantive rights or the conservation of judicial resources would be better served by interlocutory review." *Ex parte Weise*, 55 S.W.3d at 620.

We review a trial court's ruling on a pretrial writ of habeas corpus for an abuse of discretion. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006); *Ex parte Arango*, 518 S.W.3d at 923. In conducting this review, we view the facts in the light most favorable to the trial court's ruling. *See Kniatt*, 206 S.W.3d at 664; *Ex parte Arango*, 518 S.W.3d at 924. We must therefore determine which, if any, of Moon's claims are cognizable via pretrial habeas before we may address the merits. *See Ex parte Ellis*, 309 S.W.3d at 79.

**B. Analysis**

In support of his argument that pretrial habeas relief is appropriate, Moon relies on this Court's decision in *Ex parte Arango*. There, when Arango was sixteen years old, a juvenile court concluded that, because of the seriousness of the offense with which he had been charged, the welfare of the community required criminal proceedings and it transferred the case to criminal district court. *See Ex parte Arango*, 518 S.W.3d at 918. Nine years later, Arango, still having not been tried, filed a pretrial habeas application in the criminal district court contending that the juvenile court's transfer order was facially deficient under *Moon* and, therefore, failed to vest the criminal court with jurisdiction. *See id.* The trial court denied habeas relief. *See id.*

14

On appeal, Arango argued that the trial court erred in denying pretrial habeas relief because if he were to be tried and convicted, the deficient transfer order would be vacated by an appellate court, making an intervening trial an unnecessary waste of judicial resources. *See id.* This Court agreed and determined that "[t]he juvenile court's order waiving jurisdiction in this case suffers from the same flaw as the order in *Moon.*" *Id.* at 921. We concluded that "the juvenile court's transfer order does not pass muster under *Moon*, and that denying habeas relief and proceeding to trial on the basis of an invalid transfer order that failed to vest jurisdiction in the district court would be a waste of judicial resources." *Id.* at 918.

The State contends that Moon's reliance on *Ex parte Arango* is misplaced because we reached our conclusion in *Ex parte Arango* without reviewing the sufficiency of the evidence to support the transfer decision. In *Ex parte Arango*, as in *Moon*, the transfer order itself was reviewed to determine if it contained in writing sufficient evidence to meet the standards for transfer under section 54.02(a), (d), and (f). That is not what is before us today. Moon's attack on the sufficiency of the evidence to support transfer under section 54.02(j) is not cognizable on pretrial writ of habeas corpus.

"Generally, pretrial habeas is not available to test the sufficiency of the charging instrument or to construe the meaning and application of the statute defining the offense charged." *Ex parte Ellis*, 309 S.W.3d at 79; *see also Ex parte*

15

*Doster*, 303 S.W.3d at 727 (dismissing appeal because pretrial habeas application not appropriate vehicle to raise alleged violation of Interstate Agreement on Detainers Act); *Ex parte Smith*, 185 S.W.3d 887, 892–93 (Tex. Crim. App. 2006) (affirming denial of pretrial habeas relief because in pari materia claim was not cognizable in pretrial writ of habeas). We agree with the State's contention that Moon's challenge to the sufficiency of the transfer order is analogous to challenging a charging instrument because it is the order by which the criminal court has authority to criminally charge the defendant.

Further, Moon's challenge to the transfer order would require us to analyze and define terms and construe the meaning of the statute permitting the waiver of jurisdiction, something we are not permitted to do at this stage. *See Ex parte Ellis*, 309 S.W.3d at 79. For example, Moon argues that the statutory "no adjudication" requirement under section 54.02(j)(3) is not limited to "juvenile adjudication" and, therefore, his previous adjudication in criminal district court means that the State failed to prove this requirement. Moon's challenge also asks us to construe section 54.02(j)(4)(B)(iii) ("[A]fter due diligence of the state it was not practicable to proceed in juvenile court before the 18th birthday of the person because . . . a previous transfer order was reversed by an appellate court[.]"). He argues that "[a]s written, subsection (B)(iii) can only be satisfied when the reversal of the previous transfer order takes place before the juvenile's 18th birthday but too late for it to be

16

practicable to proceed in juvenile court."[3]  Thus, he concludes, "given the undisputed

fact that the reversal of the original transfer order had not happened before Moon's

18th birthday, that reversal could not have impeded the State's ability to proceed in

juvenile court before Moon's 18th birthday."  Moon argues that the State's choice

to seek certification rather than proceed in juvenile court when it could have done so

precludes recertification under section 54.02(j).[4]

Moreover, pretrial habeas relief does not lie when there is an adequate remedy

by appeal.  *See Ex parte Weise*, 55 S.W.3d at 619.  Moon's second transfer order

was entered after January 1, 1996, but before September 1, 2015, and, therefore,

Code of Criminal Procedure article 44.47 applies, which requires the discretionary

transfer decision to be reviewed on direct appeal.  *See Ex parte Powell*, 558 S.W.2d

480, 482 (Tex. Crim. App. 1977) (holding that statutory procedure for challenging

juvenile court's transfer order on direct appeal was proper procedure for seeking

---

[3]    Moon emphasizes that the statute is written in the past tense, clearly referring to something that occurs before the juvenile's 18th birthday, and that the use of "because" requires a causal link between the reversal of the previous transfer order and the inability to proceed in juvenile court before Moon turned eighteen.

[4]    Notably, this Court rejected Moon's argument in *In re J.G.*, 495 S.W.3d 354, 371 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) ("We therefore cannot agree with appellant that because the State initially chose to seek certification, which it had a statutory right to do, it now, after an appellate court has reversed the transfer order and appellant has passed his eighteenth birthday—two events that are outside the control of the State—can no longer seek recertification of appellant as an adult.").

review rather than writ of habeas corpus). Because Moon has an adequate remedy by direct appeal of the discretionary transfer decision under article 44.47, he may not use a pretrial writ of habeas corpus to appeal prematurely his subsection (j) sufficiency challenges in his first, fourth, and fifth points of error. *Ex parte Smith*, 178 S.W.3d at 801 n.13.

Similarly, we conclude that Moon's second and third points of error are not cognizable on pretrial writ. In his second point of error, Moon contends that the juvenile court's findings under section 54.02(j) were insufficient to allow it to waive its jurisdiction. "[W]hen there is a valid statute or ordinance under which a prosecution may be brought, habeas corpus is generally not available before trial to test the sufficiency of the complaint, information, or indictment." *Ex parte Weise*, 55 S.W.3d at 620. Moon's challenge to the sufficiency of the juvenile court's findings, incorporated into the juvenile court's order waiving jurisdiction and supporting its transfer order, is not cognizable on pretrial writ. *See id.*

In his third point of error, Moon asserts that the district court had jurisdiction at the time it originally adjudicated the charged offense. Specifically, Moon argues that "[i]n a second attempt to avoid the fact that there was an adjudication hearing and an adjudication concerning the alleged offense, the juvenile court made a Conclusion of Law that:

> Because the Texas Court of Criminal Appeals determined that original, exclusive jurisdiction remained in the 313th District Court [juvenile

18

court] rather than properly transferring to the 178th District Court [criminal court], no adjudication concerning this offense has been made and no adjudication hearing concerning the offense has been conducted.

In his briefing and at oral argument, Moon's counsel invites us to disregard our finding in Moon's original appeal that the criminal district court lacked jurisdiction and the case remained pending in the juvenile court. He does this by arguing that the juvenile court had jurisdiction to transfer the case and that, therefore, the district court acquired jurisdiction such that a prior adjudication had occurred when Moon was tried and sentenced to thirty years. Moon uses quotes from a number of cases for the proposition that an erroneous order may still convey jurisdiction but, in these cases, the question was not the jurisdiction of the district court but the jurisdiction of the juvenile court. These cases hold that, if the juvenile court has jurisdiction over the child, it has the power to waive that jurisdiction and, thus, a transfer of the case to district court is valid, even if it is subject to some procedural error.

Moon cites *State v. Rinehart*, 333 S.W.3d 154 (Tex. Crim. App. 2011) for the proposition that a transfer which can be challenged on procedural grounds does not divest the district court of jurisdiction. *Id.* at 158–59. However, in *Rinehart*, the transfer order was not challenged. An attempt was made to quash the indictment. *See id.* at 158. There was no question that the juvenile court had jurisdiction over the juvenile, so it had the power to waive that jurisdiction. Similarly, in *Adams v.*

19

*State*, 827 S.W.2d 31 (Tex. App.—Dallas 1992, no writ), the court of appeals held that a transfer was valid because the juvenile court had jurisdiction over the case when the order was entered. *See id.* at 33–34. In *Melendez v. State*, 4 S.W.3d 437 (Tex. App.—Houston [1st Dist.] 1999, no pet.), *overruled on other grounds by Small v. State*, 23 S.W.3d 549 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd), the court of appeals held that the failure of the juvenile court to follow the notice provisions of the Vienna Convention on Consular Relations did not deprive it of jurisdiction over the juvenile and a transfer order was proper. *See id.* at 442. These cases concern the jurisdiction of the juvenile courts, *ab initio*, to enter orders transferring the cases to district court and are primarily concerned with the propriety of challenging procedural error for the first time on appeal. This is usually not permitted, whereas jurisdictional error can always be raised. Moon invites us to compare this line of cases with *Grayless v. State*, 567 S.W.2d 216 (Tex. Crim. App. 1978). In *Grayless*, the juvenile court never acquired jurisdiction over the juvenile and so the district court also failed to acquire jurisdiction based on a transfer order from that court. *See id.* at 220. In the case before us, no one challenges the jurisdiction of the juvenile court. The cases cited by Moon do not make a convincing argument that our holding that the district court lacked jurisdiction is "merely imprecise dictum," as Moon states on page twenty of his brief.

20

Moon next argues that the Court of Criminal Appeals did not really mean it when the Court said "We affirm the judgment of the court of appeals." *Moon*, 451 S.W.3d at 52. He does this through an extended exegesis of footnote 90 from the Court's opinion. The Court began the lengthy footnote by noting that neither party contested the propriety of the court of appeals holding that the case remained pending in juvenile court, but asked "Pending for what?" *Id.* n.90. The Court then suggested that one alternative was for the juvenile court to hold a new transfer hearing under section 54.02(j), which is exactly what happened. In dictum in the second paragraph of the footnote, the Court muses about the possibility of remanding the case to the court of appeals. The Court says that the problem is that the juvenile court has "either validly waived its exclusive jurisdiction . . . or it has not," and "[u]nless the transfer order is declared invalid, the criminal court retains jurisdiction and the juvenile court [does not]." *Id.* Moon makes the argument that the absence of the words "invalid order" in the court of appeals's opinion means that the order was valid and sufficient to transfer jurisdiction to the district court. However, our finding that the juvenile court abused its discretion when it transferred the case, that the district court lacked jurisdiction, and that the case remained pending in juvenile court carries with it, at the very least, the clear implication that the transfer order was invalid and failed to transfer jurisdiction. The Court of Criminal Appeals answered its own question about whether or not the juvenile court had validly waived its

21

jurisdiction when it, without qualification, affirmed our holding that the juvenile court had not. Further, the Court's suggestion that one course of action is a new certification hearing in juvenile court under subsection (j) clearly indicates that the Court considered jurisdiction to be in the juvenile court, and not in the district court.

Moon advances this argument to support his challenge to the juvenile court's finding that section 54.03(j)(3) was satisfied, a challenge that we previously determined is not cognizable on pretrial writ. And, as the State points out, Moon's disagreement with the juvenile court's findings and conclusions does not negate the fact that they were made and included in the written order as required by Section 54.02.[5]

Accordingly, we overrule Moon's first through fifth points of error.

## Due Process Challenge

In his sixth point of error, Moon contends that the application of section 54.02(j) to recertify him deprived him of the process to which he was originally due under section 54.02(a), (d), and (f) in violation of the United States and Texas Constitutions. The State argues that Moon's claim is an improper "as applied" challenge that is not cognizable in pretrial writ of habeas corpus and, even if it were cognizable, it fails on the merits.

---

[5] Further, Moon's argument serves to disregard the finding that, lacking jurisdiction in the criminal court, the case remained pending in the juvenile court.

22

## A. Applicable Law

In *Kent v. United States*, 383 U.S. 541 (1966), the United States Supreme Court stated that "[i]t is clear beyond dispute that the waiver of jurisdiction is a 'critically important' action determining vitally important statutory rights of the juvenile." *Id*. at 556. The Court characterized the "decision as to waiver of jurisdiction and transfer of the matter to the District Court [] potentially as important to petitioner as the difference between five years' confinement and a death sentence[.]" *Id*. at 557. In *Hidalgo v. State*, 983 S.W.2d 746 (Tex. Crim. App. 1999), the Court of Criminal Appeals likewise recognized that "transfer to criminal district court for adult prosecution is 'the single most serious act the juvenile court can perform . . . because once waiver of jurisdiction occurs, the child loses all protective and rehabilitative possibilities available.'" *Id*. at 755.

Due process requires, as a condition to a valid waiver order, "a hearing, including access by [the juvenile's] counsel to the social records and probation or similar reports which presumably are considered by the court, and to a statement of reasons for the Juvenile Court's [transfer] decision." *Kent*, 383 U.S. at 557. The Supreme Court in *Kent* held that a juvenile court must "accompany its waiver order with a statement of the reasons or considerations therefor" and that transfer hearings must "measure up to the essentials of due process and fair treatment." *Id*. at 561–62.

**B. Is Moon's Due Process Claim Cognizable?**

We must first determine whether Moon's due process complaint is cognizable on pretrial habeas review.

There are two types of challenges to the constitutionality of a statute: the statute is unconstitutional as applied to the defendant, or the statute is unconstitutional on its face. *In re J.G.*, 495 S.W.3d 354, 364 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd). "A facial challenge is an attack on a statute itself as opposed to a particular application." *City of Los Angeles v. Patel*, — U.S. —, 135 S. Ct. 2443, 2449 (2015). In order to successfully mount a facial challenge, a party must establish that no set of circumstances exists under which that statute would be valid. *See United States v. Salerno*, 481 U.S. 739, 745 (1987); *State v. Rosseau*, 396 S.W.3d 550, 557 (Tex. Crim. App. 2013) ("[T]o prevail on a facial challenge, a party must establish that the statute always operates unconstitutionally in all possible circumstances."). When a party makes an "as applied" challenge to a statute, the essence of the challenge asserts that the statute, although generally constitutional, is unconstitutional when applied to the challenging party's particular circumstances. *See State ex. rel. Lykos v. Fine*, 330 S.W.3d 904, 910 (Tex. Crim. App. 2011); *In re Commitment of Fisher*, 164 S.W.3d 637, 656 n.17 (Tex. 2005).

In *Ex parte Perry*, the Texas Supreme Court stated:

> Although we have said that as-applied challenges are not cognizable before trial, we allow certain types of claims to be raised by

pretrial habeas because the rights underlying those claims would be effectively undermined if not vindicated before trial. Within this category of rights that would be effectively undermined if not vindicated pretrial, we have, so far, recognized the constitutional protections involving double jeopardy and bail. Facial constitutional challenges, however, are cognizable on pretrial habeas regardless of whether the particular constitutional right at issue would be effectively undermined if not vindicated prior to trial.

483 S.W.3d at 895.

The State contends that Moon's due process complaint is an as-applied challenge that is not cognizable on pretrial writ of habeas corpus but that, even if it was, it fails on the merits because Moon cites to no right that would be lost if not vindicated before trial.

Moon contends that section 54.02(j) "is facially unconstitutional by virtue of the fact that the deprivation of due process required by *Kent* and *Hidalgo* cannot be corrected on remand as to *any* juveniles who have aged out after a post-conviction appeal." He argues that "[t]he result of this flawed process is that a child who was erroneously certified, but 18 years or older when the case is remanded, will never receive the benefit of the § 54.02(a) and (f) standards to which he or she was originally entitled. Stated differently, the individual will have been permanently deprived of the process that was originally due to protect the child's liberty interest in access to the juvenile justice system." We construe Moon's due process claim as a facial challenge to section 54.02.

## C. Is Section 54.02 Facially Unconstitutional?

To prevail on a facial challenge, a party must establish that the statute always operates unconstitutionally in all possible circumstances. *Rosseau*, 396 S.W.3d at 557 (citing *Lykos*, 330 S.W.3d at 908–09); *see also Santikos v. State*, 836 S.W.2d 631, 633 (Tex. Crim. App. 1992) ("A facial challenge to a statute is the most difficult challenge to mount successfully because the challenger must establish that no set of circumstances exists under which the statute will be valid."). "In a facial challenge to a statute's constitutionality, we examine the statute as it is written, rather than how it is applied in a particular case." *Rosseau*, 396 S.W.3d at 558 n.9; *Lykos*, 330 S.W.3d at 908. Analysis of a statute's constitutionality begins with the presumption that the statute is valid and that the Legislature did not act arbitrarily or unreasonably in enacting it. *Rosseau*, 396 S.W.3d at 557; *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002). The individual challenging the statute has the burden of rebutting the presumption of constitutionality. *See Lykos*, 330 S.W.3d at 911; *Rodriguez*, 93 S.W.3d at 69. "In the absence of contrary evidence, we presume that the legislature acted in a constitutionally sound fashion, and we uphold the statute if we can ascertain a reasonable construction that will render the statute constitutional and will carry out the legislative intent." *In re J.G.*, 495 S.W.3d at 365.

Moon contends that section 54.02 is structurally flawed because it systematically denies the procedural due process protections of section 54.02(a), (d),

26

and (f) to all persons who, like him, are improperly certified and are over eighteen when the transfer order is reversed and he is transferred back to juvenile court. According to Moon, section 54.02 is unconstitutional because "it contains no exception to the applicability of § 54.02(j) for those who were originally entitled to the protections of § 54.02(a), (d), and (f) but were wrongly certified under those sections." He asserts that "[b]ecause *Moon* error can never be corrected as to any person who has reached the age of 18 before being remanded to the juvenile court, a re-transfer under § 54.02(j) is facially unconstitutional as to all of those persons."

Moon's broad facial challenge, to be successful, must demonstrate that the statute is unconstitutional when applied not only to those individuals, such as Moon, who were erroneously certified under (a) and (f) and who are eighteen or older when their transfers are reversed but also to those individuals entering the juvenile system for the first time who are over the age of eighteen; in other words, it must also be unconstitutional when applied to those individuals who never had the protection of section 54.02(a) and (f) in the first place. However, subsection (j) does not apply only to those whose transfer orders were set aside by an appellate court. It also applies to juveniles who could not be found, *see* § 54.02(j)(4)(B)(ii), and those who could not be charged until after their eighteenth birthday because only then was new evidence found to establish probable cause, *see id.* (j)(4)(B)(i) (contemplating lengthier investigation process). None of these juveniles would be entitled to the

27

protections of subsections (a), (d) and (f). Thus, the statute is not facially unconstitutional under all possible circumstances because it validly applies to individuals who initially enter the juvenile system when they are over eighteen years of age. *See Lykos*, 330 S.W.3d at 909 (noting that to prevail on facial challenge, party must prove that no factual circumstances exist under which statute would be constitutional).

In support of his argument, Moon relies on *In re J.G.* in which this Court, reviewing a very similar fact situation, declined a due process challenge to a second certification order under section 54.02(j) after the defendant's prior certification under section 54.02(a) and (f) had been reversed. 495 S.W.3d at 367–69. Moon contends that we only overruled the challenge because when the defendant was recertified the juvenile court also made findings under the subsection (a) and (f) factors. *See id.* at 368 ("In this case, therefore, the juvenile court essentially considered *all* of the relevant statutory factors for waiver of jurisdiction that the Legislature has specifically enumerated in section 54.02, despite the age-based distinction between subsections (a) and (f) and subsection (j).") (emphasis in original). Moon argues that here, unlike in *In re J.G.*, the juvenile court made no findings under subsections (a) and (f) and, thus, *In re J.G.* compels a ruling that Moon's due process rights were violated. However, unlike here, *In re J.G.* was an as-applied challenge on direct appeal and not a facial challenge raised in a pretrial

writ of habeas corpus. *See id.* at 368–69 ("We therefore conclude that section 54.02(j), as applied to appellant in this case, did not deprive appellant of due process and equal protection.").

Because Moon has failed to show that section 54.02(j) is unconstitutional in every possible respect, the statute is not facially unconstitutional. *See Rosseau*, 396 S.W.3d at 557. We therefore overrule his sixth point of error.

## Ex Post Facto Laws

In his seventh point of error, Moon contends that his certification under section 54.02(j) violated the prohibition against ex post facto laws in two ways. First, he asserts that his recertification changed the rules on remand and required application of different standards to subject him to adult criminal penalties than the standards that originally applied. Second, he argues that substitution of subsection (j) for (a) and (f) deprived him of a defense available at the time the alleged act was committed. The State argues that Moon's ex post facto challenge is an as-applied challenge that is not cognizable on pretrial writ and that, even if it was, section 54.02(j) is not an unconstitutional ex post facto law.

### A. Applicable Law

The United States and Texas Constitutions contain prohibitions against enacting ex post facto laws. U.S. CONST. art. I, § 10, cl. 1; TEX. CONST. art. I, § 16. An ex post facto law is one that "(1) punishes as a crime an act previously committed

29

which was innocent when done; (2) changes the punishment and inflicts a greater punishment than the law attached to the criminal offense when committed; or (3) deprives a person charged with a crime of any defense available at the time the act was committed." *Rodriguez*, 93 S.W.3d at 66 (citing *Collins v. Youngblood*, 497 U.S. 37, 42–44 (1990); *In re J.G.*, 495 S.W.3d at 366. A law is also an impermissible ex post facto law if it "alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender." *Carmell v. Texas*, 529 U.S. 513, 530 (2000).

## B. Analysis

Moon argues that application of subsection (j) to recertify him changed the rules for transfer on remand and, in doing so, made his transfer easier than it would have been originally as well as making it easier for the State to obtain an adult conviction after remand than before remand. We addressed a similar argument in *In re J.G.* There, the defendant argued that section 54.02(j) "changes the rules after the fact in a way that materially changes the state's substantive burden to certify and then convict the child, and subjects the child to adult criminal penalties to which he would not have been subject under the applicable law when the alleged crime was committed." *In re J.G.*, 495 S.W.3d at 366. We rejected the defendant's claim, noting that "while section 54.02(j) does involve the consideration of different

statutory factors from section 54.02(a), and thus requires the consideration of different evidence when making the transfer decision, the decision to transfer [the defendant] to the district court is not an adjudication or a 'conviction' of the alleged offense." *Id.* We concluded that "section 54.02(j) is not itself an unconstitutional ex post facto law. Nor is it applied unconstitutionally in this case." *Id.* at 366–67.

Moon also contends that application of subsection (j), when he was originally protected by (a) and (f), deprives him of that defense available at the time the alleged act was committed, and therefore violates the prohibition against ex post facto laws. Addressing that argument in *In re J.G.*, we concluded that section 54.02 "does not fit within any of the enumerated categories of ex post facto laws" and, in particular, does not deprive [the defendant] of a defense that was available at the time he committed the alleged criminal act[.]" *Id*. at 366. Moon has not directed us to any authority to the contrary. We therefore overrule Moon's seventh point of error.

## Equal Protection and Double Jeopardy Claims

In his eighth point of error, Moon asserts that his recertification under section 54.02(j) violated the equal protection and double jeopardy clauses.

### A. Equal Protection

#### 1. Applicable Law

An equal protection challenge to a statute involves a two-step analysis. We first determine the level of scrutiny required, and then apply that level of scrutiny to

the statute.  *Cannady v. State*, 11 S.W.3d 205, 215 (Tex. Crim. App. 2000).  "A statute is evaluated under 'strict scrutiny' if it interferes with a 'fundamental right' or discriminates against a 'suspect class.'"  *Id*.; *Walker v. State*, 222 S.W.3d 707, 711 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd).  Otherwise, the challenged statute need only be "rationally related to a legitimate governmental purpose" to survive the equal protection challenge.  *Cannady*, 11 S.W.3d at 215; *Walker*, 222 S.W.3d at 711; *see also Romer v. Evans*, 517 U.S. 620, 631 (1996) ("[I]f a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end.").  When the rational basis test applies, the challenging party has the burden to negate "any reasonably conceivable state of facts that could provide a rational basis for the classification."  *Alobaidi v. Univ. of Tex. Health Sci. Ctr. at Hous*., 243 S.W.3d 741, 747 (Tex. App.–Houston [14th Dist.] 2007, pet. denied) (quoting *Bd. of Trustees v. Garrett*, 531 U.S. 356, 367 (2001) (internal citations omitted)).

### 2. Analysis

We previously considered an equal protection challenge to section 54.02 in *In re H.Y.*, 512 S.W.3d 467 (Tex. App.—Houston [1st Dist.] 2016, pet. denied).  There, after we reversed the juvenile court's original transfer order pursuant to *Moon*, the juvenile court again waived its jurisdiction and recertified the defendant, who was then over the age of eighteen, to stand trial as an adult.  *See id.* at 470.  On appeal

32

from the second certification, the defendant argued, among other things, that section 54.02(j) violated the equal protection clause of the Texas and United States Constitutions because it enabled the State to transfer a person who has reached the age of eighteen more easily than a person under the age of eighteen. *See id.* at 477. He asserted that juveniles are a suspect class and that section 54.02 unlawfully penalized him for prevailing in his first appeal by making it easier for the State to transfer him on remand since he had reached the age of eighteen. *See id.*

After noting that "[a]ge has never been held to be a suspect classification requiring strict scrutiny under an equal protection analysis," we rejected the defendant's argument that 54.02(j) could not survive a rational basis review because "[t]he government has no legitimate interest in punishing children who successfully enforce their statutorily created rights under section 54.02(a) by prevailing on appeal." *Id*. at 476, 478. We noted that the text of the statute negated the defendant's argument, and that "there are many reasons to have non-juveniles transferred out of the juvenile court, including the fact that the resources of the juvenile court are designed to assist and rehabilitate juveniles, not adults." *Id.* at 478. We held that the defendant had failed to negate "any reasonably conceivable state of facts that could provide a rational basis for the statute's dissimilar treatment of those 17 and under versus those 18 and over." *Id.*

Moon acknowledges that age is not considered a suspect class. Instead, he argues that the right of a child to be treated as a juvenile and not subjected to the adult prison system should be considered a fundamental right warranting strict scrutiny review. He asserts that the application of section 54.02(j) to juveniles who are wrongly certified under subsections (a) and (f) and remanded to juvenile court after they turn eighteen are subjected to a different standard as a result of being deprived of that fundamental right than those who are properly afforded the protections of subsections (a) and (f) as well as those whose certifications under section 54.02 (a) and (f) are reversed and returned to juvenile court before they turn eighteen. Moon states that, under a strict scrutiny standard, the different treatment of these individuals constitutes a denial of equal protection.

However, Moon is not actually complaining about the statute's treatment of children; rather, he is complaining about the statute's treatment of those who have reached the age of eighteen and are no longer minors. As we noted in *In re H.Y.*, "[t]he statute itself recognizes that one of the reasons for transferring a person 18 years or older to the criminal district court [is] if the person is returned to the juvenile court after a transfer order is reversed and the juvenile has reached the age of 18." *Id.* And, as the State points out, there are other reasons for the different standard, including the direction of juvenile resources toward juveniles, not adults.

34

Because Moon has not shown that no rational basis exists under any reasonably conceivable state of facts to support the classification, his equal protection claim fails. *See id.*

## B. Double Jeopardy

### 1. Applicable Law

The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states through the Due Process Clause of the Fourteenth Amendment, protects an accused from being placed twice in jeopardy for the same offense. U.S. CONST. amend. V, cl. 2; *see Ex parte Milner*, 394 S.W.3d 502, 506 (Tex. Crim. App. 2013). The Texas Constitution provides substantially identical protections. *See* TEX. CONST. art. 1, § 14 ("No person, for the same offense, shall be twice put in jeopardy of life or liberty; nor shall a person be again put upon trial for the same offense, after a verdict of not guilty in a court of competent jurisdiction."). "The Double Jeopardy Clause protects criminal defendants from three things: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense." *Milner*, 394 S.W.3d at 506 (citing *Brown v. Ohio*, 432 U.S. 161, 165 (1977)). Although the Double Jeopardy Clause precludes retrial of a defendant whose conviction is reversed on appeal on the basis of insufficient evidence, it does not preclude retrial when the

defendant's conviction is reversed on appeal for trial error.  *See Lockhart v. Nelson*, 488 U.S. 33, 40–41 (1988).

## 2. Analysis

Moon argues that double jeopardy bars recertification in this case because the original certification order was reversed due to a lack of evidence.

We considered this same argument in *In re J.G.*  There, the defendant argued that double jeopardy barred recertification because, on appeal from his original certification, the Fourteenth Court of Appeals had determined that insufficient evidence supported the juvenile court's decision to waive jurisdiction and transfer his case to the district court.  *See In re J.G.*, 495 S.W.3d at 365.  We noted that although it was true that the Fourteenth Court of Appeals determined that the juvenile court had erroneously certified him as an adult, it did not reach the question of whether insufficient evidence supported the juvenile court's decision.  *See id.* Rather, the Fourteenth Court of Appeals based its opinion on the fact that, under *Moon*, the transfer order itself was facially defective because it did not make any specific findings about the seriousness of the defendant's alleged offense and did not support its ultimate conclusion that transfer was warranted by the facts found in the record.  *See id.*  We emphasized that the Fourteenth Court of Appeals held that the transfer order itself was defective and not that the trial court's decision to waive jurisdiction and transfer the defendant's case was not supported by sufficient

evidence. *See id.* We concluded that "because [the defendant's] prior conviction for the charged offense in this case was reversed due to trial error, and not due to insufficient evidence, double jeopardy does not preclude the juvenile court from waiving its jurisdiction, certifying [the defendant] as an adult, and transferring the case to district court a second time." *Id.* (citing *Lockhart*, 488 U.S. at 39).

Double jeopardy precludes retrial when an appellate court reverses a defendant's case for insufficient evidence of guilt, but it does not preclude retrial when it reverses the judgment based on trial court error. *See Lockhart*, 488 U.S. at 38 ("[T]he Double Jeopardy Clause's general prohibition against successive prosecutions does not prevent the government from retrying a defendant who succeeds in getting his first conviction set aside, through direct appeal or collateral attack, because of some error in the proceedings leading to conviction."). Here, contrary to Moon's assertion, the first order certifying him was reversed because the transfer order itself was defective and not because the evidence against him was insufficient.

Because Moon's prior conviction for the charged offense in this case was reversed due to trial error, and not due to insufficient evidence, double jeopardy does not preclude the juvenile court from waiving its jurisdiction and recertifying him as an adult. *See id.*

Accordingly, we overrule Moon's eighth point of error.

37

## Conclusion

We affirm the trial court's denial of Moon's pretrial writ of habeas corpus.

Russell Lloyd
Justice

Panel consists of Justices Lloyd, Goodman, and Hightower.

Justice Goodman, concurring.

Justice Hightower, concurring.

Publish.   TEX. R. APP. P. 47.2(b).