

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-22-00073-CV
_____

IN THE MATTER OF X.S., A JUVENILE

On Appeal from the County Court at Law
Harrison County, Texas
Trial Court No. 5105-J

Before Morriss, C.J., Stevens and van Cleef, JJ.
Opinion by Justice Stevens

OPINION

In this accelerated appeal, X.S. challenges the juvenile court's order waiving jurisdiction and transferring his case to a criminal district court for trial as an adult on charges of murder, participating in a riot, and engaging in organized criminal activity.[1]  X.S. argues that (1) the juvenile court lacked jurisdiction due to a defective summons and that (2) the evidence is legally and factually insufficient to support the juvenile court's findings favoring the decision to transfer the case.  Because we conclude that the summons was not defective and that the decision to transfer was supported by sufficient evidence, we affirm the juvenile court's order of transfer.

## I.    Background

On February 18, 2022, the State filed both an adjudication petition against sixteen-year-old X.S. and an original petition for discretionary transfer to criminal court.  This Court reversed the juvenile court's prior decision to transfer this case after finding that the previous record failed to show that X.S. received a summons attaching a petition to certify him has an adult.  *See In re X.S.*, No. 06-22-00038-CV, 2022 WL 4002911, at *1 (Tex. App.—Texarkana Sept. 2, 2022, no pet.) (mem. op.).

In its first amended petition for discretionary transfer to criminal court, the State alleged that X.S. engaged in organized criminal activity by committing the murder of Kaden Barrick while being a member of a criminal street gang.  The State also alleged that the murder occurred after X.S.'s participation in a riot that caused a fight to break out.  Because the charges were not

---

[1]*See* TEX. PENAL CODE ANN. §§ 19.02, 42.02, § 71.02 (Supp.).

adjudicated, the State prayed for a discretionary transfer to a criminal court. Section 54.02 of the

Texas Family Code, which authorizes such a transfer, states, in relevant part:

> (a)  The juvenile court may waive its exclusive original jurisdiction and transfer a child to the appropriate district court or criminal district court for criminal proceedings if:
>
> > (1)  the child is alleged to have violated a penal law of the grade of felony;
> >
> > (2)  the child was:
> >
> > > (A)  14 years of age or older at the time he is alleged to have committed the offense, if the offense is a capital felony, an aggravated controlled substance felony, or a felony of the first degree, and no adjudication hearing has been conducted concerning that offense; or
> > >
> > > (B)  15 years of age or older at the time the child is alleged to have committed the offense, if the offense is a felony of the second or third degree or a state jail felony, and no adjudication hearing has been conducted concerning that offense; and
> >
> > (3)  after a full investigation and a hearing, the juvenile court determines that there is probable cause to believe that the child before the court committed the offense alleged and that because of the seriousness of the offense alleged or the background of the child the welfare of the community requires criminal proceedings.

TEX. FAM. CODE ANN. § 54.02(a).

At the hearing, Kenny Phillips, a detective with the Marshall Police Department, testified that many people met at a local park to engage in a fight that resulted in the shooting death of Barrick. According to Phillips, witnesses identified X.S. as the shooter. Phillips said that X.S. fled after the shooting and was found in Gregg County. After his arrest, X.S. executed a written confession admitting to discharging a firearm during the incident.

3

Scott Smith, a lieutenant with the Marshall Police Department, testified that, based on his investigation of gang member social media accounts, he believed X.S. was a member of the "SRT" gang. Smith testified that X.S. had a caption underneath his screen name that said, "Murda . . . doctor" after the shooting.

The juvenile court also heard testimony from Philleniea Williams, a Juvenile Probation Officer for Harrison County, and admitted a psychological evaluation, social history report, and an East Texas Council on Alcoholism and Drug Abuse (ETCADA) evaluation without objection. Williams testified that the psychological evaluation showed X.S. had attention-deficit/hyperactivity disorder, impulsive propensities, and difficulty maintaining control over his emotions and anger. Even so, he could anticipate the consequences of his actions and recognize the boundaries of appropriate behavior. As for his intelligence, the evaluation stated that, "[o]n this administration of the Wechsler Adult Intelligence Scale – Third Edition (WAIS-III), [X.S.] obtained a Verbal IQ of 86 (18th percentile), a Performance IQ of 77 (6th percentile), and a Full Scale IQ score of 80 (9th percentile). Results suggested current general intellectual functioning in, the Low Average range." X.S. claimed during the evaluation that he was not at the crime scene, but the evaluation concluded that X.S. tended to minimize problems and tried to describe himself in socially desirable terms. Williams testified, and the evaluation showed, that X.S. was not diagnosed with any mental condition and was found competent.

Williams prepared the social history report, which considered X.S.'s school and disciplinary records. Williams, who had contacted school officials, noted that a principal said X.S. had difficulty making good choices and considering the consequences of his actions, that

4

another principal described X.S. as extremely immature, and that his counselor said that he was easily influenced and immature. The school's disciplinary report contained twenty-two referrals, including one in which X.S. allegedly had a handgun while at school. Williams also testified that X.S. was not passing his school classes.

The social history showed that X.S. had previously been referred to Harrison County Juvenile Services for unauthorized use of a vehicle and resisting arrest or search. Williams testified, and the social history showed, that X.S. had "anger outbursts" while in the detention center and was "sneaky and hot tempered." According to Williams, X.S.'s detention supervisor and juvenile supervision officer felt that X.S. had limited comprehension, did not understand the severity of his choices, and was a follower, not a leader. While in the Juvenile Detention Center, X.S. received write-ups for using social media, failing to follow instructions, beating on his door, and being disrespectful. Yet, Williams said there was nothing in the reports that suggested X.S. did not know right from wrong.

When asked about the ETCADA evaluation results, Williams testified that it showed X.S. had tested positive for marihuana and that he had severe cannabis use disorder.

At the end of the hearing, the juvenile court concluded that the juvenile system would be unable to provide X.S., who had turned seventeen, with adequate services to sufficiently rehabilitate him before he reached eighteen.

## II.     The Juvenile Court's Summons Was Not Defective

In his first point of error, X.S. argues that the juvenile court lacked jurisdiction to transfer him to criminal court because the summons served on him was defective. We disagree.

"[T]he right of a juvenile offender to remain outside the jurisdiction of the criminal district court is not absolute." *Ex parte Arango*, 518 S.W.3d 916, 920 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd). A juvenile's discretionary transfer to criminal court is authorized by Section 54.02 of Texas Family Code. TEX. FAM. CODE ANN. § 54.02. That section sets forth petition and notice requirements and provides that "the summons must state that the hearing is for the purpose of considering discretionary transfer to criminal court." TEX. FAM. CODE ANN. § 54.02(b).

Here, the State's first amended petition for discretionary transfer to criminal court requested "that summons as required by law be issued." On April 7, 2022, the same day as the amended petition was filed, the juvenile court issued a summons to X.S. and his mother, which we previously found to be defective. *See In re X.S.*, 2022 WL 4002911, at *1. After our prior opinion in this case issued on September 2, the juvenile court issued a new summons commanding X.S. and his mother to appear in person on Wednesday, September 14, 2022, at 2:45 for an "ADULT CERTIFICATION and TRANSFER HEARING." The summons, which was served by Williams on both parties on September 6, also stated that a copy of the petition was attached. The State's live pleading was the first amended petition for discretionary transfer to criminal court. Williams testified that she had personally served X.S. and his mother with a summons for court and said that they had notice that the hearing was an adult certification transfer hearing. Williams also clarified that she had served them with a copy of the "petition for certification." Also, the juvenile court's order expressly found that X.S. was personally served

6

with a copy of the "Petition Seeking Discretionary Transfer." X.S. and his mother were present at the hearing.

We conclude that the summons, which stated that the hearing was for an "ADULT CERTIFICATION and TRANSFER HEARING," complied with Section 54.02 because it notified X.S. and his mother that the hearing was for the purpose of considering discretionary transfer to criminal court. The summons also said that a petition was attached. Because of Williams's testimony and the trial court's findings, unlike the circumstances of our prior opinion in *In re X.S.*, the record affirmatively showed that X.S. received a copy of a petition seeking discretionary transfer to a criminal court. *Id.* As a result, we do not conclude that the summons was defective such that it deprived the juvenile court of jurisdiction. We overrule X.S.'s first point of error.

## III.    The Juvenile Court's Decision Was Supported by Sufficient Evidence

In his last point of error, X.S. argues that the evidence was legally and factually insufficient to support the juvenile court's transfer decision. "The State has the burden to persuade the juvenile court by a preponderance of the evidence that the welfare of the community requires transfer of jurisdiction for criminal proceedings, either because of the seriousness of the offense or the background of the child (or both)." *In re T.C.*, No. 06-21-00075-CV, 2022 WL 398419, at *3 (Tex. App.—Texarkana Feb. 10, 2022, no pet.) (mem. op.) (quoting *In re A.K.*, No. 02-20-00410-CV, 2021 WL 1803774, at *19 (Tex. App.—Fort Worth May 6, 2021, pet. denied) (mem. op.) (citing *In re K.W.*, No. 02-19-00323-CV, 2020 WL 98144,

7

at *3 (Tex. App.—Fort Worth Jan. 9, 2020, no pet.) (mem. op.))). The juvenile court considers the following in making a transfer decision:

> (1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person;
>
> (2) the sophistication and maturity of the child;
>
> (3) the record and previous history of the child; and
>
> (4) the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.

*Id.* (quoting TEX. FAM. CODE ANN. § 54.02(f)). "The factors in Section 54.02(f) are nonexclusive factors . . . and any combination of these criteria may suffice to support a waiver of jurisdiction and transfer." *Id.* (quoting *In re C.O.*, No. 02-21-00235-CV, 2021 WL 5933796, at *5 (Tex. App.—Fort Worth Dec. 16, 2021, pet. filed) (mem. op.)). "Also, '[t]he statute requires only that the court consider the factors listed; it does not mandate that any particular factor be true, or limit the purpose for which the factors may be considered.'" *Id.* (quoting *In re Z.T.*, No. 05-21-00138-CV, 2021 WL 3645103, at *13 (Tex. App.—Dallas Aug. 17, 2021, pet. denied) (citing *Ex parte Thomas*, 623 S.W.3d 370, 382 (Tex. Crim. App. 2021))). "The court is also not required to give each of the factors equal weight." *Id.* (quoting *In re Z.T.*, 2021 WL 3645103, at *13).

## A. Standard of Review

"Our review of a transfer order is two pronged." *Id.* (quoting *In re A.K.*, 2021 WL 1803774, at *18). "First, we review the juvenile court's specific findings of fact regarding the Section 54.02(f) factors under 'traditional sufficiency of the evidence review.'" *Id.* (quoting *In re A.K.*, 2021 WL 1803774, at *18 (quoting *In re C.M.M.*, 503 S.W.3d 692, 701 (Tex. App.—

8

Houston [14th Dist.] 2016, pet. denied))). "Under a factual sufficiency challenge, we consider all the evidence presented to determine if the juvenile court's findings are against the great weight and preponderance of the evidence so as to be clearly wrong and unjust." *Id.* (quoting *In re A.K.*, 2021 WL 1803774, at \*18) (citing *In re C.M.M.*, 503 S.W.3d at 701); *see In re Z.T.*, No. 05-21-00138-CV, 2021 WL 3645103, at \*8 (Tex. App.—Dallas Aug. 17, 2021, pet. denied) (mem. op.) ("Where, as here, we have a record from the hearing, we may review the entire record to determine whether the facts elicited sufficiently support the juvenile court's stated reason or reasons for the transfer.").

"Second, we review the juvenile court's waiver decision for an abuse of discretion." *Id.* (quoting *In re A.K.*, 2021 WL 1803774, at \*18) (citing *In re C.M.M.*, 503 S.W.3d at 701). Stated differently,

> in deciding whether the juvenile court erred to conclude that the seriousness of the offense alleged or the background of the juvenile or both called for criminal proceedings for the welfare of the community, we simply ask, in light of our own analysis of the sufficiency of the evidence to support the Section 54.02(f) factors and any other relevant evidence, whether the juvenile court acted without reference to guiding rules or principles.

*Id.* (citing *In re A.K.*, 2021 WL 1803774, at \*18) (citing *In re C.M.M.*, 503 S.W.3d at 701). "A juvenile court abuses its discretion when its transfer decision is essentially arbitrary, given the evidence upon which it was based." *Id.* (quoting *In re A.K.*, 2021 WL 1803774, at \*18) (citing *In re C.M.M.*, 503 S.W.3d at 701). "By contrast, a waiver decision representing 'a reasonably principled application of the legislative criteria' generally will pass muster under this standard of review." *Id.* (quoting *In re A.K.*, 2021 WL 1803774, at \*18) (quoting *In re C.M.M.*, 503 S.W.3d at 701).

**B.      Analysis**

As for the first Section 54.02(f) factor, X.S. was charged with three offenses, including (1) the murder of Barrick, a first-degree felony under Section 19.02 of the Texas Penal Code, (2) engaging in organized criminal activity by being "a member of the criminal street gang 'SRT'" while committing murder, also a first-degree felony under Section 72.01 of the Texas Penal Code, and (3) participating in a riot that resulted in fighting under Section 42.02 of the Texas Penal Code.[2]  The juvenile court found that there was probable cause to believe that X.S. committed the offenses as alleged.  Because of the testimony by Phillips and Smith, recited above, we conclude that the juvenile court's finding of probable cause was supported by factually sufficient evidence.  Since X.S.'s offenses were aimed at harming persons, not property, and one of those offenses resulted in a death, we conclude that the offenses weighed heavily in favor of transfer.

As to the second factor, the juvenile court found that X.S. was sophisticated and mature based on the nature and circumstances of the offenses and his social, psychological, and ETCADA evaluations.[3]  "[I]n assessing maturity and sophistication, courts place weight on whether there is evidence indicating the juvenile knew right from wrong."  *In re T.C.*, 2022 WL 398419, at *4 (quoting *In re Z.T.*, 2021 WL 3645103, at *14) (citing *In re K.J.*, 493 S.W.3d 140,

---

[2]Participating in a riot is typically a Class B misdemeanor except that it "is an offense of the same classification as any offense of a higher grade committed by anyone engaged in the riot if the offense was:  (1) in the furtherance of the purpose of the assembly; or (2) an offense which should have been anticipated as a result of the assembly."  TEX. PENAL CODE ANN. § 42.02(f).

[3]Relying on *Moon v. State*, 451 S.W.3d 28 (Tex. Crim. App. 2014), X.S. argues that the trial court's findings were not specific enough.  *Moon* was disavowed and overruled in *Ex parte Thomas*, 623 S.W.3d 370, 379 (Tex. Crim. App. 2021) (orig. proceeding).  As a result, while detailed findings are preferred, "case-specific fact-findings" are not necessary.  *Id.* at 381.

151 (Tex. App.—Houston [1st Dist.] 2016, no pet.)). The evidence showed that X.S. was immature, was of low average intelligence, was easily influenced, and had difficulty making good choices and considering the consequences of his actions. Even so, Williams expressly testified that X.S. knew the difference between right and wrong. The psychological evaluation said that X.S. "display[ed] adaptive capacity to think logically and coherently." The evaluation continued, "He is about as capable as most people in recognizing conventional modes of response." It also showed X.S. could anticipate the consequences of his actions and recognize the boundaries of appropriate behavior. As a result, X.S. described himself in socially desirable terms and tended to minimize problems. Also, the record showed that X.S. fled to another county after committing the alleged offenses. From this fact, the juvenile court could have concluded that X.S. was aware that his actions were wrong. *See id.* (finding that juvenile's flight indicated he was aware that his actions were wrong). X.S. also demonstrated maturity when, after further reflection, he decided to execute a written confession stating that he had discharged a firearm at the park. *See id.* Even though the evidence on the second factor was conflicting, we cannot say that the juvenile court's finding on the second Section 54.02(f) factor was against the great weight and preponderance of the evidence. *See id.*

Next, as for X.S.'s record and previous history, Smith testified that he believed X.S. was a member of the SRT gang, which carried significant weight. *See In re K.M.*, No. 01-20-00121-CV, 2020 WL 4210493, at *12 (Tex. App.—Houston [1st Dist.] July 23, 2020, no pet.) (mem. op.) ("A juvenile court may give significant weight to gang affiliation when assessing previous history."). X.S. had used marihuana, and his ETCADA labeled him as having severe cannabis

11

use disorder. Also, "[t]he juvenile court may consider disciplinary measures taken by the child's school and rule infractions while the child is in the juvenile detention facility following the commission of the offense in determining whether the child's record and previous history weigh in favor of transfer." *Bell v. State*, 649 S.W.3d 867, 895 (Tex. App.—Houston [1st Dist.] 2022, pet. filed). X.S., who was not passing his classes, had twenty-two school referrals, including one involving an allegation that he brought a gun on campus. X.S. was previously referred to Harrison County Juvenile Services for unauthorized use of a vehicle and resisting arrest or search. He was described as having a hot temper and received write-ups for using social media, failing to follow instructions, beating on his door, and being disrespectful. We find that the juvenile court's finding that the third Section 54.02(f) factor weighed in favor of transfer was supported by factually sufficient evidence.

As for the last factor, we note that the third Section 54.02(f) factor also "serve[s] to facilitate the juvenile court's balancing of the potential danger to the public posed by the particular juvenile offender with his amenability to treatment." *In re T.C.*, 2022 WL 398419, at *5 (quoting *In re T.L.*, No. 02-19-00200-CV, 2019 WL 4678565, at *6 (Tex. App.—Fort Worth Sept. 26, 2019, no pet.) (mem. op.)). Despite prior referrals to juvenile services, X.S. continued to engage in delinquent conduct. Two pending charges against him were serious first-degree felonies that involved a firearm. Though he was facing those charges, X.S. received write-ups for misbehavior while in juvenile detention. Also, X.S. was seventeen at the time of the hearing, and that was "particularly relevant . . . because the resources of the juvenile court are designed to assist and rehabilitate juveniles, not adults." *Id.* (quoting *In re Z.T.*, 2021 WL 3645103, at *13)

12

(citing *In re H.Y.*, 512 S.W.3d 467, 478 (Tex. App.—Houston [1st Dist.] 2016, pet. denied)). We find that the juvenile court's decision on the last Section 54.02(f) factor was supported by factually sufficient evidence.

The circumstances of the offenses also weighed heavily in favor of the transfer. The evidence showed that X.S., while a member of a gang, participated in a riot and shot a firearm, killing Barrick. The trial court could have found that X.S.'s decision to include the caption "Murda . . . doctor" on his social media account displayed cold-bloodedness. After reviewing all the evidence, we cannot find that the juvenile court's Section 54.02(f) findings were against the great weight and preponderance of the evidence so as to be clearly wrong and unjust. As a result, we overrule X.S.'s complaint that these findings were not supported by factually sufficient evidence.

On this record and in light of these findings, we cannot say that the juvenile court's decision was arbitrary or made without reference to guiding rules or principles. Instead, the decision resulted from an application of legislative criteria after careful consideration of the surrounding facts and circumstances. Accordingly, we find no abuse of discretion in the juvenile court's decision to waive jurisdiction and transfer the case to a criminal district court.

## IV. Conclusion

We affirm the juvenile court's order of transfer.

Scott E. Stevens
Justice

Date Submitted:     December 13, 2022
Date Decided:       December 14, 2022

14